**EXHIBIT B**

**FILED**

JUL 2 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

WARREN C. HAVENS
2649 Benvenue Avenue #1
Berkeley, California 94704
Tel: (510) 848-7797
Fax: (510) 841-2226

*In Propria Persona*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WARREN C. HAVENS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PATTON BOGGS, LLP, a Limited Law Partnership, STEVEN SCHNEEBAUM, an individual, and DOES 1 through 10,<br><br>Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT; REQUEST FOR JURY TRIAL**<br><br>CASE NUMBER 1:05CV01454<br><br>JUDGE: Henry H. Kennedy<br><br>DECK TYPE: Contract<br><br>DATE STAMP: 07/__/2005 |

Plaintiff Warren C. Havens for his Complaint herein alleges as follows:

## JURISDICTION AND VENUE

1. Federal diversity jurisdiction is proper under 28 U.S.C. § 1332(a)(1), because the controversy is between citizens of different states and the amount in controversy exceeds $75,000.00.

2. Venue is proper in this judicial district because the underlying lawsuit (in which Defendants represented Plaintiff and engaged in actions and inactions subject of this Complaint) was pending in this district and the Defendants' places of business are in this district.

3. This Court has personal jurisdiction over each of the Defendants because they either reside in the District of Columbia or have their principal place of business in the District of Columbia and have committed the acts complained of herein in the District of Columbia.

## THE PARTIES

4. Plaintiff Warren C. Havens resides in the State of California and was a client of the Defendants in connection with *Lukas Nace Gutierrez v. Havens et. al. v. Lukas Nace Gutierrez*, Civil Action No. 99-0395 in the US District Court for the District of Columbia, in which action Plaintiff was a defendant and counterclaimant.

5. Defendant Patton Boggs LLP is a law firm with its principal office at 2550 M Street, NW, Washington, D.C. 20037.

6. Defendant Steven Schneebaum, Esquire, is an attorney who practices in Washington, D.C., and was formerly and at all relevant times was a partner in the firm of Patton Boggs, LLP. Upon information and belief, Mr. Schneebaum resides in the District of Columbia.

7. Plaintiff does not know the true names and capacities of the defendants named herein as Does 1 through 10 and therefore sues such Does by fictitious names. All of such fictitiously named Defendants at all relevant time were agents or employees of Defendant Patton Boggs LLP working in its Washington, D.C. office, and are residents of Washington, D.C., Maryland or Virginia. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

8. Plaintiff is informed and believes that Defendants, and each of them, are, and at all times herein mentioned were, the agents, servants, employees, alter egos and/or representatives of their Co-Defendants, and were at all times herein mentioned acting within the scope, purpose, and authority of such agency, service, employment, and representation, and with the permission, knowledge, and consent of their Co-Defendants. Any reference hereinafter to "Defendants" is intended by Plaintiff to refer to "Defendants, and each of them."

## GENERAL ALLEGATIONS

9. On February 17, 1999 Defendants entered into a written agreement with Plaintiff to perform legal services in connection with litigation involving Plaintiff and Lukas Nace Guiterrez & Sachs, Civ. Action No. 0009823-98 in the Superior Court of the District of Columbia ("the Litigation") (the "Agreement").

10. Defendants represented Plaintiff in the Litigation in discovery and pretrial proceedings including court-ordered settlement undertakings. In accordance with the Agreement, Plaintiff paid Defendants in cash for its services, including retainer sums and subsequent amounts billed. There was no contingency component of the Agreement or of the actual representation, billing, and payments.

11. During the course of the Litigation, Defendants made various mistakes, errors of judgment and/or failures to competently perform the services for which Plaintiff hired them, and then withdrew as Plaintiff's counsel. They also failed to keep Plaintiff reasonably informed about the progress of the litigation and/or concealed important developments and other matters in connection with their legal representation of Plaintiff.

12. As a direct result, Plaintiff was forced to engage new counsel at great expense and risk, was subject to a court order that granted in part an adverse summary judgment, and was forced to settle his claims in the Litigation and the Litigation for vastly less than their actual value. Settlement of the Litigation was finalized on or about July 23, 2002 by court order which became final and non-appealable after a subsequent period of time.

## FIRST CAUSE OF ACTION—PROFESSIONAL NEGLIGENCE
(Against All Defendants)

13. Plaintiff reasserts and realleges paragraphs 1 through 12, above, and incorporates them by reference as if fully set forth herein.

14. Defendants, while acting as Plaintiff's attorneys in connection with the Litigation, breached the standard of care applicable to attorneys in the relevant community, and concealed

their breaches of due care from Plaintiff, and knowingly gave him bad legal advice in an effort to keep him from discovering their breaches of the standard of care.

15. As a direct, proximate and foreseeable result of Defendants' aforementioned misconduct, Plaintiff was injured in an amount to be proven at trial, in excess of the jurisdictional limit.

16. Defendants committed the acts described in this Complaint oppressively, fraudulently, and maliciously, and in reckless disregard of the Plaintiff's rights. The acts of fraud, oppression and malice were authorized by, committed by and/or ratified by an officer, agent, or managing agent of Defendant Patton Boggs LLP. Plaintiff is therefore entitled to an award of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

Whereupon, Plaintiff prays judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION—BREACH OF CONTRACT
(Against All Defendants)

17. Plaintiff reasserts and realleges paragraphs 1 through 16, above, and incorporates them by reference as if fully set forth herein.

18. As described in paragraph 9 above, Plaintiff entered into a written agreement with Defendants (the "Agreement") for provision of legal representation to Plaintiff. A true and correct copy is attached hereto.

19. Under the terms of the Agreement, Defendants were obligated to represent Plaintiff's interests in the Litigation competently and in accordance with the standards of care applicable in the relevant community of legal professionals.

20. As described in paragraph 10 above, Plaintiff performed all of his obligations under the Agreement and paid all amounts required of him under the Agreement.

21. Defendants breached the Agreement by failing represent Plaintiff's interests in the Litigation competently and in accordance with the standards of care applicable in the relevant community of legal professionals. Defendants made various mistakes, errors of judgment and/or

failures to competently perform the services for which Plaintiff hired them. They effectively required Plaintiff to obtain substitute counsel by their wrongful actions and inactions complained of herein, and, in order to avoid Plaintiff realizing such actions and inactions (such as by Summary Judgment the other party eventually obtained due to such wrongful actions and inactions), they adamantly advised Plaintiff to pay the other party to the Litigation a high sum of money not called for under the known sworn applicable facts and law. They also failed to keep Plaintiff reasonably informed about the progress of the litigation and/or concealed important developments and other matters in connection with their legal representation of Plaintiff. They also provided damaging advice to the attorneys for the other party to the Litigation as to how such party may amend their Complaint to their advantage and Plaintiff's disadvantage.

22.    As a direct, proximate and foreseeable result of Defendants' breaches of the Agreement, Plaintiff was damaged in an amount to be proven at trial, in excess of the jurisdictional limits.

Whereupon, Plaintiff prays judgment as hereinafter set forth.

[The rest of this page is intentionally left blank.]

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment as follows:

1. For general, special and consequential damages in the amount of $4 million;

2. For an award of punitive damages in the amount of $6 million or such other amount determined to be sufficient to punish, deter, and make an example of Defendants;

3. For prejudgment and postjudgment interest on any award as permitted by law;

4. For costs of suit herein; and

5. For such other and further relief as the court may deem just and proper.

Dated: July 22, 2005

By _____
Plaintiff WARREN G. HAVENS,
*In propria persona*

///

## DEMAND FOR JURY TRIAL

Plaintiff Warren G. Havens hereby demands a jury trial.

Dated:    July 22, 2005

By _____
Plaintiff WARREN G. HAVENS,
*In propria persona*

COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT; REQUEST
FOR JURY TRIAL
Page 7

COMPLAINT ATTACHMENT
(9 pages)

3-1-99
Signed
—WH

## PATTON BOGGS LLP
### ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202 457 6000

Facsimile 202 457 6315

Paul C. Besozzi
(202) 457-5292
pbesozzi@pattonboggs.com

February 17, 1999

Mr. Warren C. Havens
2509 Stuart Street
Berkeley, California 94705

Re: **Engagement Letter**

Dear Warren:

Thank you for retaining Patton Boggs, L.L.P. to represent you in connection with the matter of <u>Lukas, Nace, Gutierrez & Sachs Chartered v. Warren Havens</u>, Civ. Action No. 0009823-98 in the Superior Court of the District of Columbia or as removed to Federal District Court. We look forward to working with you on this engagement.

    To ensure that you and we have a common understanding of the terms of our representation and to comply with the codes of professional responsibility for the jurisdictions in which we practice, I have enclosed a statement describing the standard terms of engagement for legal services to be provided by Patton Boggs, L.L.P. The terms of engagement cover such matters as our procedure for handling potential conflicts of interest, fees, costs and expenses, billing arrangements and terms of payment. Please review the document carefully to ensure that it comports with your understanding.

    This letter supplements and modifies the enclosed terms of engagement. If you have any questions concerning the matters discussed in either document, please contact me promptly so that I may address them with you.

    I will be primarily responsible for the work done on your behalf. I anticipate that associates and legal assistants may assist in the matter under my supervision.

FILED
05 1454
JUL 22 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

BALTIMORE • DALLAS • DENVER • GREENSBORO • SEATTLE • WASHINGTON, DC

t By: TELEBAURUS;    510 841 2226;    Jul-26-05 1:47PM;    Page 4

## PATTON BOGGS LLP
ATTORNEYS AT LAW

Mr. Warren C. Havens
February 17, 1999
Page 2

As explained more fully in the terms of engagement, we will determine our legal fees based on our standard hourly billing rates in effect when the work is performed and the number of hours worked by each attorney. Steven Schneebaum will be principally responsible for handling this matter. His hourly rate is $350. Hourly rates for other attorneys who may perform services in this matter range from $235 to $285. Generally, we adjust our billing rates for partners in January and those of our associates in October. In addition to our fees for legal services, we also charge separately for certain costs and expenses as described in the enclosed statement.

We will bill you at an hourly rate without a retainer through the filing of a notice to remove the case from the D.C. Superior Court to the Federal District Court for the District of Columbia and for any time, up to a maximum of ten (10) hours, associated with an attempt to settle the case. Thereafter, assuming the case proceeds, we will require a retainer payment of $25,000, which we will bill against. The retainer will be kept at a level of $15,000 for the balance of the litigation. In other words if our monthly billing reduces the retainer balance below $15,000 it would be replenished to that amount.

With respect to travel expenses, we would not charge for airline or other travel expenses unless it had been previously approved by you. Nor would we charge for pure travel time, unless previously agreed upon or we were working on your matters. Copy costs are for copies made for use in connection with your representation, including copies we may use internally in connection with that representation.

If these terms and conditions, including those set forth in the terms of engagement, meet with your approval, I would appreciate your acknowledging acceptance of both documents by signing and returning the enclosed copy of this letter. If you have any questions about these terms or would like to discuss them, please call me as soon as possible so as not to impede our commencing work on your behalf.

t By: TELESAURUS;                510 841 2228;          Jul-22-05  1:47PM;        Page 5

## PATTON BOGGS LLP
ATTORNEYS AT LAW

Mr. Warren C. Havens
February 17, 1999
Page 3

We look forward to working with you to achieve a successful result.

Very truly yours,

*[signature]*

Paul C. Besozzi
for PATTON BOGGS, L.L.P.

Enclosure

AGREED TO AND ACCEPTED:

*[signature]*

Warren C. Havens

# PATTON BOGGS, L.L.P.

## *Standard Terms of Engagement for Legal Services*

We appreciate your selection of our Firm to represent you. The purpose of this statement is to provide you with important information about the scope of this engagement, our fees and billing policies, and other terms that will govern our relationship. While we do not wish to begin this relationship on an unduly formal footing, it has been our experience that this statement is helpful to both the client and the Firm.

Unless modified by the engagement letter forwarded along with this enclosure, this statement sets forth the standard terms of our engagement as your lawyers. We therefore ask that you carefully review it to ensure that it comports with your understanding of our respective responsibilities. If you have any questions concerning the matters discussed below, please contact us promptly so that we may address them with you. We suggest that you retain a copy of this statement with your signed copy of the accompanying engagement letter, as these terms will be an integral part of our agreement with you.

### The Scope of Our Engagement

The accompanying engagement letter describes the work we are to perform on your behalf. We want you to have a clear understanding of the legal services we will provide, and encourage you to review the letter and to discuss with us any questions you may have concerning these services.

We will at all times act on your behalf to the best of our ability. During the course of our representation, you may seek our professional opinion regarding the likely outcome of your legal matters. Any expressions (solicited or otherwise) on our part concerning such possible outcomes are expressions of our best professional judgment, but are not guarantees.

Before we begin representing a particular client, we try to determine whether there are any conflicts of interest that would interfere with our representation of that client's interests. Should we determine in the course of our representation that a conflict has arisen, we will immediately notify you. We similarly ask you to notify us if you become aware of any potential conflicts of interest. If either you or we conclude

- 1 -

REV: January 1997

that our representation should or must be terminated, we will do our best to protect your interests by assisting in providing a smooth transition to new counsel.

It is our policy that we represent only the person or entity that is specifically identified in our accompanying engagement letter and not any affiliates of that person or entity. This means that if you are a corporation or partnership, or governmental agency or department, our engagement does not include representation of any parents, subsidiaries or affiliates, or other agencies or departments. Nor does it include representation of any employees, officers, directors, shareholders of the corporation or partners of the partnership, or agency or department, or commonly owned corporations, joint ventures or other corporate, governmental or contractual affiliates or partnerships. If you are an association, our representation does not include representation of any of your individual members.

Accordingly, for conflict of interest purposes, by signing the enclosed engagement letter, you are agreeing that we may represent another client with interests adverse to any such affiliate or individual association member without obtaining your further consent. Whether we will do so will depend on several factors, including the jurisdiction in which the representation will be undertaken and whether (i) the adverse matter is the same as, or substantially related to, the matter on which the Firm is representing you; (ii) there is a risk of adverse use or unauthorized disclosure of confidences or secrets obtained during our representation of you; (iii) the representation likely will have a material adverse effect on your financial condition; or (iv) the other client would be adverse to an entity which is your "alter ego."

We also wish to emphasize that Patton Boggs, L.L.P. provides a wide array of legal services to many clients around the world. These services include legislative and administrative representation on matters that may affect your interests, directly or indirectly. Therefore, as a condition of our undertaking to represent any client on a particular matter as described in our accompanying engagement letter, we ask each of our clients to waive objection to any conflict of interest that might be deemed to be created by our representation of other clients in legislative or administrative policy matters that are unrelated to the specific representation we have been asked to undertake on their behalf. Your waiver will permit us to represent another client in advocating a change in law or policy in areas such as environmental or business regulation, international trade, health care, or taxation, even if the policy we advocate would or might have a direct or indirect adverse impact upon your interests. It is also possible that some of our current or future clients will have disputes with you during the time we are representing you. We therefore also ask each of our clients to agree that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to our work for you, even if the interests of such clients in those unrelated matters are directly adverse to yours. We agree, however, that your prospective consent to conflicting representation shall not

REV: January 1997

apply in any matter that is substantially related to the subject matter of our representation of you, or as to which we have obtained from you sensitive, proprietary or other confidential information of a non-public nature that, if known to any other such client of ours, could be used by such client to the material disadvantage of your interests. We emphasize that the consent requested concerns only matters that are unrelated to the work for which you are currently engaging us, and we would not undertake any representation that is related in any material way to the current matter. In all cases, we will preserve the confidentiality of all non-public information that you provide us. Your signature on the attached engagement letter will constitute your agreement to the waivers requested in this paragraph. (We recognize that, in certain jurisdictions, governmental agencies, unlike private parties, may not consent to adverse representation by its counsel even in unrelated matters.)

It is also our policy that the attorney-client relationship will terminate upon our completion of any services that you have retained us to perform. We hope, of course, that you will choose to retain our Firm to perform further or additional services. Should you do so, our attorney-client relationship will be re-established subject to these terms of engagement, as they may be supplemented at that time.

### Who Will Provide the Legal Services

Your representation will be supervised by the principal attorney specified in the accompanying engagement letter. Subject to the principal attorney's supervision, other lawyers, in-house consultants and/or legal assistants (paralegals) in the Firm may perform services on your behalf. The staffing decisions are made by the principal attorney with the objective of rendering timely and cost effective services to you. Whenever practicable, we will advise you of the names of those attorneys, in-house consultants and legal assistants who work on your matters.

### How Fees Will Be Set

Fees for services rendered will be based on the reasonable value of those services as determined in accordance with the codes of professional responsibility for the jurisdictions in which we practice. Fees will be based primarily on our standard hourly billing rates in effect at the time the work is performed and the numbers of hours worked. Each attorney, legal assistant (paralegal), law clerk, and in-house consultant is assigned a standard hourly billing rate, based on the person's experience, years of practice, special expertise, and professional achievement. The accompanying engagement letter details the current billing rates of the persons most likely to perform the primary services on your behalf. The Firm typically adjusts these rates on an annual basis to reflect current levels of legal experience, changes in overhead costs and other factors.

- 3 -

REV: January 1997

Time for which a client will be charged will include, among other things, telephone and office conferences with the client, witnesses, consultants, court personnel and others; conferences among our legal personnel; factual investigations; legal research; preparation of responses to clients' requests for us to provide information to their auditors; drafting of letters, pleadings, briefs, memoranda and other documents; travel time; and time in depositions, other discovery proceedings and in court. We charge our time in units of one quarter of an hour.

We are often requested to estimate the amount of fees and costs likely to be incurred in connection with a particular matter. Whenever possible we will furnish an estimate based upon our professional judgment, but always with a clear understanding that it is not a maximum or fixed fee quotation. All estimates are subject to unforeseen circumstances and are by their nature inexact.

In rare cases, we will consider providing legal services on a contingent fee basis. Any contingent fee arrangement must be reflected in a written contingent fee agreement approved by our Contingent Fee Review Committee and our Executive Committee.

### Costs and Expenses

In addition to our fees for legal services, we also charge separately for certain costs and expenses incurred in performing those services. These expenses may include costs of photocopying, messenger and delivery service, computerized research, travel, long-distance telephone calls, telecopying, filing fees, staff overtime expenses and other similar costs and expenses. Certain of these items may be charged at more than our direct cost to cover our overhead. Unless special arrangements are made at the outset, fees and expenses of experts and consultants will be the responsibility of, and will be billed directly to, the client.

Our policy requires other out-of-pocket charges in the amount of $1,000 or more to be billed and paid by you to the Firm before the supplier can be paid. Because our ability to render legal services on your behalf is often dependent upon the services of these suppliers, prompt payment of these invoices is particularly important.

We reserve the right to make at your expense and retain copies of all documents generated or received by us in the course of our representation. When you request documents from us, copies that we generate shall also be made at your expense, including both professional fees for time expended in reviewing files to be copied and reproduction costs.

REV: January 1997

### Billing Arrangements and Terms of Payment

We will bill you on a regular basis, ordinarily each month, for both fees and costs and expenses. We generally send our statements in the second half of the month following the month to which the bill relates. Our statements are payable upon presentation. If any monthly statement is not paid in full within thirty days of its date, then we may assess a late charge on the unpaid balance at the rate of 1.0% per month until full payment is made.

We will notify you promptly if your account becomes delinquent, and you agree to bring the account or the advance deposit current when so notified. If the delinquency continues and you do not arrange satisfactory payment terms, we reserve the right to postpone or defer providing additional services or to withdraw from the representation and pursue collection of your account. If collection activities are necessary, you agree to pay to us any costs we may incur in collecting the debt, including court costs, filing fees and a reasonable attorney's fee.

### Termination of Representation

You may terminate our representation at any time, with or without cause, by notifying us. If such termination occurs, upon your request, we will promptly return to you any papers or property that you have given to us, subject to our rights, where permitted by applicable rules of professional conduct, to retain such papers or property as security for the payment of any outstanding fees, costs or expenses. We will retain our own work-product pertaining to the case for a reasonable period of time after such termination. It is our general policy not to retain copies of files or other records relating to an engagement for more than five years after completion of the services you have asked us to perform. Thereafter, we destroy those files unless the client tells us otherwise. If you want us to keep files for a longer period of time, please tell us. Your termination of our services will not affect your responsibility for payment of legal services rendered and costs and expenses incurred before termination and in connection with an orderly transition of the matter.

We are subject to the rules of professional responsibility for the jurisdictions in which we practice, which list several types of conduct or circumstances that require or allow us to withdraw from representing a client, including for example: nonpayment of fees or costs, misrepresentation of or failure to disclose material facts, action contrary to our advice, conflict of interest with another client or, if in our judgment, any fact or circumstance would render our continuing representation unlawful or unethical. If withdrawal ever becomes necessary, we will take all reasonable measures to ensure a smooth transition to new counsel. Your signature on the engagement letter

- 5 -

REV: January 1997

Sent By: TELESAURUS;    Case 1:05-cv-01454-HHK    Document 1-2    Filed 07/26/2005    Page 9 of 9    Page 11/11

accompanying this statement constitutes your agreement not to contest our motion to withdraw from any court or administrative proceeding in these circumstances.

### Insurance Coverage

It is possible that you may have insurance policies relating to a matter with respect to which you request our assistance. You should carefully check all policies and, if coverage may be available, notify the insurance company about the matters as soon as possible. We do not undertake any responsibility to advise you as to the existence, applicability or availability of insurance coverage for any of the matters to be handled by us unless you have provided us with copies of your policies of insurance and expressly request our advice as to potential coverage under those policies. If an insurance company undertakes the payment of any portion of our statements, you will still remain responsible for any amounts not paid by the insurance company.

REV: January 1997