*DECLARATION, EXHIBIT 1*

CAPITOL PROCESS SERVICES, INC.
1827 18th Street, N.W.
Washington, D.C. 20009-5526
(202) 667-0050
Tax I.D. 52-2283731

**PAID**

11-22-2005

WARREN HAVENS
PRO SE
2649 BENVENUE AVENUE, #1
BERKELEY, CA 94704

Warren C. Havens, v. Patton Boggs, LLP, et al.

Case No. 1:05CV01454 HHK

Invoice No. 162115

Client Matter No. N/A

---

SERVICE OF PROCESS
Steven Schnecbaum, Greenberg Traurig LLP, 815 Connecticut Avenue, NW, Washington, DC 20006
11-22-2005  — *Completed*

| | |
|---|---|
| COURT FILING ON 11/18/05 | $225.00 |
| 3.0 HOURS X $75.00 PER HOUR  *3 hours* | |
| COURT RETRIEVAL ON 11/21/05  *waiting for* | $150.00 |
| 2.0 HOURS X $75.00 PER HOUR | |
| SERVICE OF PROCESS-RUSH  *Summonses* | $80.00 |
| *to be issued –* | |
| AMOUNT PAID-  *to no* | $455.00 |
| BALANCE DUE UPON RECEIPT-  *avail..* | $0.00 |

Please write invoice no. 162115 on your check.

**Case Comments-**

\* *Waiting in at courthouse, with me on phone to court clerks, to have the Summonses processed. – W. Havens*

*DECLARATION, EXHIBIT 2*

CAPITOL PROCESS SERVICES, INC.
1827 18th Street, N.W.
Washington, D.C. 20009-5526
(202) 667-0050
Tax I.D. 52 2283731



**PAID**

11-22-2005

WARREN HAVENS
PRO SE
2649 BENVENUE AVENUE, #1
BERKELEY, CA 94704


Warren C. Havens, v. Patton Boggs, LLP, et al.

Case No. 1:05CV01454 HHK

Invoice No. 162117

Client Matter No. N/A

---

SERVICE OF PROCESS *
Patton Boggs, LLP, 2250 M Street, NW, Washington, DC 20037
11-22-2005

| | |
|---|---:|
| SERVICE OF PROCESS-RUSH | $80.00 |
| **AMOUNT PAID-** | $80.00 |
| **BALANCE DUE UPON RECEIPT-** | $0.00 |

Please write invoice no. 162117 on your check.

**Case Comments-**

\* See other sheet for charges for multiple courthouse trips & waiting for Summonses.

*DECLARATION, EXHIBIT 3*

**Warren Havens**
2649 Benvenue Ave, #1, Berkeley, CA 94704

(510) 848 7797, home
(510) 841 2220 x 30, office

wchavens@aol.com
(510) 841 2226, fax
(510) 914 0910, cellular

To: Kim
Capital Process Services, Inc.
1827 18th Street, N. W. Washington, D. C. 20009
(202) 667-0050  Toll Free (800) 243-8773
FAX to (202) 667-2520

Thursday 11-17-05

*Case 05 1454 HHK*

We spoke on the phone in the last half hour, and I provided my credit card for the charges on the following. I understand and accept your hourly fee for getting the summonses completed and the rush service fees. I need to have the service completed by Friday, due to a 120 day limit in which this can be served. Friday is the last day. If you need to make multiple attempts, or send out a few persons, I will pay the extra charge. The following is what I need.

Please make copies of the Complaint and its Attachment as you need for the following.

1. Take the three Summonses to the Court, and have the court complete them. Take this letter to show the Court Clerk that I have authorized this.[1] Wait for this to be done (if you drop off and come back, there will not be enough time to get the service done, considering a few attempts may be needed).

2. First, attempt to serve the completed Summons with the Complaint and its Attachment to Steven Schneebaum at his office (use the Summons with the Greenberg Traurig law firm address on Connecticut Ave). (Mr. Schneebaum is an attorney, and behaves rationally, so there should not be any disturbance involved.)

3. Then, if he is not there, attempt to serve the completed Summons with the Complaint and its Attachment to Steven Schneebaum at his residence (use the Summons with address on Cortland Pl, DC). If he is not there, but you can still satisfy the service rules by serving someone else there, then do that. (I don't know if other family members are there during the day, but I expect they are there in evenings and early mornings.)

4. Serve the completed Summons with the Complaint and its Attachments to Patton Boggs LLC (a law firm) during the day (at their office on M Street NW, as the Summons states).

5. If you could not serve Mr. Schneebaum at either of the two addresses, they attempt service at the address in Falls Church (see that Summons). (I know that rush service there is a higher charge than in DC).

Let me know by phone as soon as service is complete, and in any case let me know if there are any problems on Friday. Thanks,

Warren Havens
Attachments: Complaint and Attachment, and the four summonses.

---

[1] Also, as I mentioned on the phone, a service company called Caring Hands dropped of the first three Summonses noted above today at the US District Court, to pick them up "in a few days" but that is not what I asked. I cancelled that service. But your representative may need to tell the Court clerk about this: The clerk does not have to execute those, only the ones you bring in to get processed while you wait.

*DECLARATION, EXHIBIT 4*

**Warren Havens**
2649 Benvenue Ave, #1, Berkeley, CA 94704

(510) 848 7797, home
(510) 841 2220 x 30, office

wchavens@aol.com
(510) 841 2226, fax
(510) 914 0910, cellular

To: Collene
Caring Hands (Legal Process Service)
Phone (202) 216 4310

Wednesday 11-16-05

Fax to (202) 216 4312 ✓

I spoke to your office last night, and the lady there suggested I fax the attached documents to you this evening, and call you in the morning your time. When I call, I can give you my credit card for the applicable charges.

I need to have the service completed today, Thursday, but at the latest by Friday. If you need to make multiple attempts, or send out a few persons, I will pay the extra charge. The following is what I need.

Please make copies of the Complaint and its Attachment as you need for the following.

1. Take the three Summonses to the Court, and have the court complete them per standard procedure.

2. First, attempt to serve the completed Summons with the Complaint and its Attachment to Steven Schneebaum at his office (use the Summons with the Greenberg Traurig law firm address on Connecticut Ave). (Mr. Schneebaum is an attorney, and behaves reasonably, so there should not be any disturbance involved.)

3. Then, if he is not there, attempt to serve the completed Summons with the Complaint and its Attachment to Steven Schneebaum at his residence (use the Summons with address on Cortland Pl). If he is not there, but you can still satisfy the service rules by serving someone else there, then do that. (I don't know if other family members are there during the day, but I expect they are there in evenings and early mornings.)

4. Serve the completed Summons with the Complaint and its Attachments to Patton Boggs LLC (a law firm) during the day (at their office on M Street NW, as the Summons states).

Let me know by phone as soon as service is complete, and in any case let me know by the end of Thursday as to the Status. Thanks,

*[signature]*

Attachments: Complaint and Attachment, and the three summonses

*[handwritten margin notes: "1 on my WF card.", "7010 Westmoreland Rd., Falls Church, VA 22042."]*

ps: if Mr. Schneebaum is not at either address, I have another one to try — in Fairfax County.

**Exhibit A**

Underlining added. Relevance noted in Opposition text above. Irrelevant sections at end deleted, as noted in the bracketed comment.

2005 U.S. Dist. LEXIS 17961

---

EMANUEL JOHNSON, JR., Plaintiff, v. JOHN ASHCROFT, et. al. Defendants.

Civil Action No.: 04-1158 (RMU), Document No.: 3

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*2005 U.S. Dist. LEXIS 17961*

**August 17, 2005, Decided**
**August 17, 2005, Filed**

**PRIOR HISTORY:** *Johnson v. Williams, 2004 U.S. App. LEXIS 27406 (D.C. Cir., Dec. 29, 2004)*

**COUNSEL:** [*1] For EMANUEL JOHNSON, JR, Plaintiff: Pro se, Woodbridge, VA.

For ANTHONY A. WILLIAMS Mayor, Government of the District of Columbia, JOHN A. KOSKINEN, City Administrator, Government of the District of Columbia, KELVIN ROBINSON, Chief of Staff to the Mayor of the Government of the District of Columbia, JUDY BANKS, Personnel Officer for the Government of the District of Columbia, E. BARRETT PRETTYMAN, JR., Inspector General, Government of the District of Columbia, CHARLES C. MADDOX, Inspector General, Government of the District of Columbia, AUSTIN A. ANDERSEN, Interim Inspector General, Government of the District of Columbia, KAREN A. BRANSON, General Counsel, Office of the Inspector General, TERRY WYLLIE, Assistant Inspector General for Metropolitan Police Department Corruption, GAIL DAVIS, Assistant Corporation Counsel, TERESA A. QUON, Assistant Corporation Counsel, DAVID A. JACKSON, Assistant Corporation Counsel, Defendants: Wendel Vincent Hall, OFFICE OF THE CORPORATON COUNSEL, Washington, DC.

**JUDGES:** RICARDO M. URBINA, United States District Judge.

**OPINIONBY:** RICARDO M. URBINA

**OPINION:**

**MEMORANDUM OPINION**

**DENYING IN PART AND GRANTING IN PART THE DEFENDANTS' MOTION TO DISMISS THE [*2] COMPLAINT**

Page 14

## I. INTRODUCTION

The *pro se* plaintiff, Emanuel Johnson, Jr., brings a constitutional torts claim against various employees of the District of Columbia. Specifically, the plaintiff sues the following D.C. employees in their official and individual capacities: Kelvin Robinson, Barrett Prettyman, Charles Maddox, Austin Anderson, Karen Branson, Judy Banks, Gail Davis, Teresa Quon, David Jackson, Terry Wyllie, and John A. Koskinen (collectively, the "D.C. defendants"). n1 The plaintiff sues D.C. defendants Prettyman and Wyllie for allegedly interfering with his employment relationship with the D.C. Office of the Inspector General ("OIG"). The plaintiff sues the remaining D.C. defendants for allegedly submitting false evidence in a related proceeding. This matter is before the court on the D.C. defendants' motion to dismiss the complaint for **failure to effect timely service** and for failure to comply with the applicable statutes of limitations. Because the plaintiff makes a cognizable claim against Prettyman and Wyllie, the court denies the defendant's motion to dismiss the claims against them. Because the claims against Davis, Quon, Jackson, Maddox, Andersen, Branson, [*3] Koskinen, Robinson and Banks are barred by res judicata, the court grants the motion to dismiss as to those defendants.

n1 The complaint also names John Ashcroft, J.C. Carter, Danny O. Coulson, Ralph Lawrence, Steven Riggin, James W. Vatter, and Edward M. Shubert as federal defendants, but, to date, only the District defendants have filed a motion to dismiss. Accordingly, this opinion addresses only the D.C. defendants' motion to dismiss and the claims against those defendants.

## II. BACKGROUND

### A. Factual History

The plaintiff, an African-American male, worked as a special agent with the FBI between 1973 and 1999. Compl. at 13. During that time, the plaintiff was a named plaintiff in a Title VII class action lawsuit filed in the United States District Court for the District of Columbia by African-American special agents against the FBI. *Id.* at 26. That lawsuit, commonly known as the BADGE lawsuit, settled in 1993. *Id.*; Mem. in Support of Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") [*4] at 4. After retiring from the FBI, the plaintiff began working as a special agent with the OIG. Pl.'s Opp'n at 3-4. Although it is unclear from the plaintiff's complaint, it seems that the plaintiff applied to work at the OIG twice: once in 1998 and once in 1999. n2 Compl. at 4, Ex. E.

n2 The plaintiff also states that *Johnson v. Ashcroft, et al.*, 00-cv-2743 is a related case regarding his termination from the OIG. Mem. in Support of Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 4, Ex. E. The D.C. Circuit opinion in that case states that he began his employment at the OIG in June 1999. *Johnson v. Williams*, 117 Fed. Appx. 769, slip op. at 1 (D.C. Cir. 2004).

In Counts III and IV of the plaintiff's complaint, n3 the plaintiff alleges that D.C. defendants Prettyman and Wyllie conspired to interfere, and did interfere, with his employment relationship with the OIG. *Id.* at 25-71. Specifically, the plaintiff alleges that Wyllie spread rumors about him and that he was not selected for [*5] a position at the OIG in 1998 as a result. *Id.* at 67-68. The plaintiff further alleges that Prettyman improperly considered racially-charged statements made by federal defendant Carter in his decision not to hire the plaintiff in 1998. Pl.'s Opp'n at 4, Ex. E. The plaintiff claims that he found out about Wyllie's and Prettyman's actions after on April 14, 2003, when he heard Richard Sullivan's testimony at a trial related to the plaintiff's termination from the OIG, *Johnson v. Ashcroft et al.*, No. 00-cv-2743. Pl.'s Opp'n at 2-3, 8, Ex. E.

Page 15

n3 Counts I, II and V of the plaintiff's complaint contain his allegations against the federal defendants. The plaintiff alleges that the federal defendants created a hostile work environment during his tenure at the FBI, Compl. at 14, and that they retaliated against him for his participation in the BADGE class action suit. Pl.'s Opp'n at 4.

The remaining counts of the plaintiff's complaint allege that some of the D.C. defendants provided false evidence to the court [*6] during the proceedings surrounding his termination from the OIG after he was hired in 1999. Compl. 72-74. The plaintiff contends that the false evidence, consisting of a trial exhibit and an affidavit, resulted in an adverse ruling in *Johnson v. Ashcroft et al.*, No. 00-cv-2743, on July 9, 2003. Compl. at 73-74; Pl.'s Opp'n at 8.

### B. Procedural History

The plaintiff filed the complaint in the current action on July 9, 2004. The plaintiff claims that he executed requests for waiver of service as to the D.C. defendants in the early part of November 2004. Pl.'s Opp'n at 5. Defendant Banks returned a signed request for a waiver of service on November 13, 2004, *id.* at 2, and was the only D.C. defendant to return the request for waiver of service. *See* Compl. at 6; Def.'s Mot. at 5.

The D.C. defendants filed a motion to dismiss the complaint on December 21, 2004 because the plaintiff failed to effect timely service. Additionally, the D.C. defendants claim that the plaintiff's complaint is time barred by the applicable statute of limitations. The court now turns to the defendants' motion.

### III. ANALYSIS

#### A. Failure to Effect Timely Service

The defendants first [*7] argue that the complaint should be dismissed because the plaintiff did not effect timely service on the D.C. defendants, as required by ***Federal Rule of Civil Procedure 4(m)***. Defs.' Mot. at 4. The court agrees that the plaintiff failed to effect timely service. <u>But, because this Circuit gives wide latitude to *pro se* plaintiffs and because the D.C. defendants have not been prejudiced by the late service, the court, in its discretion, declines</u> to dismiss the plaintiff's complaint for failure to timely serve the defendants.

#### 1. Legal Standard for a *Rule 12(b)(5)* Motion to Dismiss for Insufficient Service of Process

A party can move the court to dismiss a complaint under *Federal Rule of Civil Procedure 12(b)(5)* for insufficient service of process. "The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of *Rule 4* and any other applicable provision of law." *Light v. Wolf,* 259 U.S. App. D.C. 442, 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotations omitted); [*8] *Hilska v. Jones, 217 F.R.D. 16, 20 (D.D.C. 2003).*

*Rule 4* governs service of process. ***FED. R. CIV. P. 4. Rule 4(m)*** provides the time limits for service and the consequences of failing to provide proper service. It states that:

> if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

*FED. R. CIV. P. 4(m)*. Thus, where the plaintiff fails to effect proper service within the 120-day time limit laid down by *Rule 4(m)*, the plaintiff carries the burden of showing good cause for that failure. *FED. R. CIV. P. 4(m)*; *Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, 3 (D.D.C. 2004). Even if the plaintiff does not show good cause, the court [*9] may, in its discretion, direct the plaintiff to effect service within a certain time rather than dismiss the case. *FED. R. CIV. P. 4(m)*. Ultimately, however, unless the procedural requirements of effective service of process are satisfied, a court lacks power to assert personal jurisdiction over a defendant. *Gorman v. Ameritrade Holding Corp.*, 352 U.S. App. D.C. 229, 293 F.3d 506, 514 (D.C. Cir. 2002) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987)).

### 2. The Plaintiff Failed to Effect Timely Service

The plaintiff argues that, although he filed his complaint on July 9, 2004, the period for service of process did not begin to run until July 15, 2004, the day the plaintiff received the signed summonses from the clerk of the court. Pl.'s Opp'n at 4-5. The plaintiff's argument, however, is entirely without merit. *Rule 4(m)* explicitly states that the complaint and the summons must be served "within 120 days *after the filing of the complaint.*" *FED. R. CIV. P. 4(m)* (emphasis added). The rule does not carve out any exceptions based on the date that the clerk [*10] signs the summons. Accordingly, the deadline for service was November 6, 2004. Because the plaintiff did not serve the requests for waiver of service until after that date, Pl.'s Opp'n at 4; Pl.'s Opp'n to Defs.' Supp. at 2, he failed to serve the defendants in a timely manner. n4

> n4 In the alternative, the plaintiff argues that he has shown good cause for his **failure to effect timely service.** The court finds the plaintiff's excuses for not effecting service unpersuasive. The plaintiff's excuse that he is involved in numerous complex suits, Pl.'s Opp'n. at 5, 7, does not show that he had good cause to fail to effect timely service. Indeed, attorneys involved in many complex suits are still expected to comply with the Federal Rules of Civil Procedure. The plaintiff's claim that he "utilized economic discretion" in incurring costs to obtain the addresses of some of the defendants is also unavailing. The plaintiff was able to perfect service within ten days after the deadline for service had passed, *id.* at 5, suggesting that his lateness was not an exercise in "economic discretion," but rather, a lack of diligence. Furthermore, the plaintiff that does not have the authority to *sua sponte* "coordinate service results for the convenience of this court." *Id.* at 7. The court assures the plaintiff that it can handle the logistical process of a complex case so long as the parties follow the Federal Rules of Civil Procedure.

[*11]

### 3. The Court Declines to Dismiss the Case Based on the Plaintiff's Failure to Effect Proper Service

Notwithstanding the plaintiff's **failure to effect timely service** on the D.C. defendants, the court does not dismiss the complaint in its entirety. The court's decision is based on the following: (1) the plaintiff effected service within a few days of the deadline, (2) the defendants have not claimed that they were prejudiced by the delay in effecting service, and (3) the plaintiff is litigating this case *pro se.*

When a plaintiff fails to effect proper service without showing good cause, *Rule 4(m)* entrusts courts with the discretion to either dismiss the case or to direct the plaintiff to perfect service within a prescribed period of time. *FED. R. CIV. P. 4(m)*. Factors that a court may consider in exercising its discretion include: (1) whether the defendants show any actual harm on the merits of the suit caused by the delay in service; (2) whether it is likely that the defendants received actual notice of the suit within a

short time after the attempted service; and (3) whether dismissal without prejudice will effectively equal dismissal [*12] with prejudice because the statute of limitations has run after the filing of the suit. *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002); *see also Panaras v. Liquid Carbonic Ind. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996). This court, in previous cases, has attempted to balance the hardships that the plaintiff and the defendants face. *Wilson v. Prudential Fin.*, 332 F.Supp.2d 83, 89 (D.D.C. 2004) (granting an extension of time to perfect service where there was no great prejudice to the defendant). The D.C. defendants in this case have not claimed that they were prejudiced by the late service. Also, the D.C. defendants likely received actual notice when Banks returned the waiver of service request after the service deadline had passed.

Further, pro se plaintiffs are generally subject to less stringent standards in filing and maintaining their lawsuits than those plaintiffs who are represented by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972) (holding that a *pro se* complaint is subject to less stringent standards than formal pleadings drafted by attorneys). This circuit also affords [*13] *pro se* plaintiffs latitude with regards to service issues. The D.C. Circuit has held that "pro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleading." *Moore v. Agency for Int'l Dev.*, 301 U.S. App. D.C. 327, 994 F.2d 874, 876 (D.C. Cir. 1993). In *Moore*, the court emphasized the "importance of providing pro *se* litigants with the necessary knowledge to participate effectively in the trial process," and concluded that while the courts "do not need to provide detailed guidance to pro se litigants . . . [they] should supply minimal notice of the consequence of not complying with procedural rules." *Id.*; *see also Hilska v. Jones*, 217 F.R.D. 16, 22 (D.D.C. 2003) (declining to dismiss the *pro se* plaintiff's complaint without minimal notice of the consequence of his failure to effect proper service). Accordingly, the court declines to dismiss the plaintiff's complaint based on the **failure to effect timely service.**

### B. The Statute of Limitations
[ Deletions * * * *. Not relevant here.]

### IV. CONCLUSION

For the foregoing reasons, the court grants in [*24] part and denies in part the defendants' motion to dismiss. Accordingly, defendants Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks are dismissed from this suit. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of August 2005.

RICARDO M. URBINA

United States District Judge

**ORDER**

**DENYING IN PART AND GRANTING IN PART THE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

For the reasons stated in the accompanying Memorandum Opinion, it is this 17th day of August, 2005,

**ORDERED** that the defendants' motion to dismiss the complaint is **GRANTED in part** and **DENIED in part.**

**SO ORDERED.**

RICARDO M. URBINA

United States District Judge

**Exhibit B**

The following is the US DOJ Brief before the US Supreme Court in No. 99–694. Johnson, dba F. C. Johnson Construction Co. v. Herman, Secretary of Labor, et al. C. A. 5th Cir. Certiorari denied. 182 F. 3d 914.

The following is the full text from the following US DOJ website link:
http://www.usdoj.gov/osg/briefs/1999/0responses/99-0694.resp.html

Underlining added. Relevance noted in Opposition text above.

---

No. 99-694

In the Supreme Court of the United States

FREDDIE C. JOHNSON, SR.,
DBA F.C. JOHNSON CONSTRUCTION COMPANY, PETITIONER
v.
ALEXIS M. HERMAN, SECRETARY OF LABOR, ET AL.

ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

BRIEF FOR THE FEDERAL RESPONDENT
IN OPPOSITION

SETH P. WAXMAN
Solicitor General
Counsel of Record
Department of Justice
Washington, D.C. 20530-0001
(202) 514-2217

HENRY L. SOLANO
Solicitor of Labor
ALLEN H. FELDMAN
Associate Solicitor
ELIZABETH HOPKINS
Attorney
Department of Labor
Washington, D.C. 20210

QUESTION PRESENTED


Whether the court of appeals properly affirmed, as within the discretionary authority of the district court, the district court's grant of a 30-day extension of time for service of the complaint.

In the Supreme Court of the United States

No. 99-694

FREDDIE C. JOHNSON, SR.,
DBA F.C. JOHNSON CONSTRUCTION COMPANY, PETITIONER

v.

ALEXIS M. HERMAN, SECRETARY OF LABOR, ET AL.

ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

BRIEF FOR THE FEDERAL RESPONDENT
IN OPPOSITION

OPINIONS BELOW

The per curiam opinion of the court of appeals (Pet. App. 10-13) is unpublished, but the decision is noted at 182 F.3d 914 (Table). The memorandum opinion of the district court (Pet. App. 1-9) is also unreported.

JURISDICTION

The judgment of the court of appeals was entered on May 26, 1999, and a timely petition for rehearing was denied on July 29, 1999. Pet. App. 14. The petition for a writ of certiorari was filed on October 22, 1999. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

STATEMENT

1. Petitioner Freddie Johnson owned and operated an unincorporated construction company. Pet. App. 1-2. Following an inspection of petitioner's workplace, the Secretary of Labor issued two citations on June 16, 1994, alleging violations of the Occupational Safety and Health Act of 1970 (OSH Act), 29 U.S.C. 651 et seq., which petitioner failed to contest. Pet. App. 2. On February 14, 1995, the Occupational Safety and Health Review Commission (OSHRC) granted the Secretary's motion for a default judgment and entered an order affirming a total penalty of $7,350. Ibid. Petitioner appealed to the Fifth Circuit, which denied the appeal. 78 F.3d 582 (1996) (Table). This Court denied petitioner's subsequent petition for a writ certiorari. 519 U.S. 981 (1996).

After petitioner failed to pay the penalty assessed in the citations, the Secretary filed this action in district court to recover the penalty. Pet. App. 2. Petitioner counterclaimed, alleging a number of errors in the underlying OSHRC proceeding, and moved to dismiss the Secretary's complaint on the same basis. He additionally claimed that the Secretary had not properly served him with the complaint, and that the

court lacked jurisdiction over the matter. Id. at 3-5. The Secretary moved to dismiss Johnson's counterclaim, and moved for summary judgment on her complaint seeking enforcement of the penalty. Id. at 5-8.

2. The district court denied petitioner's motion to dismiss the enforcement action, dismissed petitioner's counterclaim, and granted the Secretary's motion for summary judgment. Pet. App. 8. The court first addressed petitioner's argument that the case should be dismissed because the Secretary did not serve him with the complaint and summons within 120 days of the filing of the complaint, as provided in **Rule 4(m)** of the Federal Rules of Civil Procedure. Id. at 3-4. The court noted that petitioner was served on July 26, 1997, 143 days after the complaint was filed. Id. at 4. Although the Secretary had pointed out that she had served petitioner with a request for waiver of service on March 10, 1997, the court held that service of the notice and waiver forms do not establish "good cause" for failure to meet the 120-day time limit. Id. at 3-4. Nevertheless, "[i]n accordance with its discretionary powers, the court [found] that the time period for service of process should be extended 30 days to August 2, 1997." Id. at 4.

The district court then addressed and rejected petitioner's remaining arguments for dismissal. First, the court held that it had jurisdiction over the Secretary's action to enforce the penalty pursuant to 29 U.S.C. 666(1). Pet. App. 4-5. The court further held that petitioner's arguments concerning the merits of the underlying OSHRC proceeding were barred by res judicata and collateral estoppel. Id. at 5. The court next dismissed petitioner's counterclaim, concluding that it did not involve a proper subject matter for a counterclaim under Rule 13(a), Fed. R. Civ. P., because it was based on the underlying OSHRC proceeding, and not on the enforcement of the penalty. Pet. App. 6. Finally, the court granted the Secretary's motion for summary judgment. Id. at 8.

3. The court of appeals affirmed in an unpublished per curiam decision. Pet. App. 10-13. First, noting that there is no jurisdictional amount in OSH Act enforcement cases, the court rejected as frivolous petitioner's argument that the district court lacked jurisdiction over the case because the amount in controversy was less than $50,000. Id. at 11. The court also rejected as frivolous petitioner's argument that, absent a finding of good cause, the district court lacked the discretionary authority to extend the time for service. Ibid. (citing Fed. R. Civ. P. 4(m), the Advisory Committee's Notes to Rule 4, and Thompson v. Brown, 91 F.3d 20, 21 (5th Cir. 1996). The court rejected petitioner's remaining arguments as waived, and dismissed the appeal as "without arguable merit." Pet. App. 11-12.

ARGUMENT

The decision of the court of appeals is correct and does not conflict with any decision of this Court. While the decision in this case conflicts with a decision of the Fourth Circuit, the continued validity of the Fourth Circuit decision is questionable in light of this Court's decision in Henderson v. United States, 517 U.S. 654 (1996), as the Fourth Circuit itself has recognized. Moreover, the remaining circuits that have addressed the issue are all in agreement with the approach taken by the Fifth Circuit in this case. Accordingly, further review is unwarranted.

1. **Rule 4(m)**, which was added to the Federal Rules of Civil Procedure in December 1993, states:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows

Page 21

> good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (emphasis added). This rule replaced former Rule 4(j), which provided that if service was not accomplished within 120 days of filing the complaint, "and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant." Fed. R. Civ. P. 4(j), 28 U.S.C. app. (1988). Thus, by its terms, the current rule departs from its predecessor by granting district courts the discretion to extend the time for service, irrespective of good cause, while requiring courts to extend the time if good cause is shown. The Advisory Committee's Notes to Rule 4 confirm this reading of the current rule:

> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.

Fed. R. Civ. P. 4, Advisory Committee Notes.

2. Despite the clarity of the current rule, petitioner argues that the district court lacked the authority under Rule 4(m) to extend the time for service, and was required to dismiss the case, because the Secretary failed to show good cause for her failure to serve petitioner within 120 days of the filing of the complaint. Pet. 8. In this regard, petitioner claims, without explanation, that the court of appeals' affirmance of the district court's decision extending the time for service in this case conflicts with this Court's decision in Henderson v. United States, supra. In fact, however, the Henderson decision--which held that the Suits in Admiralty Act's requirement that complaints be served "forthwith" had been superseded by "Rule 4's extendable 120-day time prescription," 517 U.S. at 663--is entirely consistent with the Fifth Circuit's ruling in this case. As the Court in Henderson explained, where- as under the former Rule 4(j) district courts were authorized to extend the 120-day period only upon a showing of good cause, under Rule 4(m) "courts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown.'" Id. at 662 (quoting Advisory Committee's Notes to Fed. R. Civ. P. 4).

Petitioner's contention (Pet. 8-9) that the Fifth Circuit's ruling conflicts with decisions of the First, Second, Third, Fifth, Sixth, Ninth, Tenth, Eleventh and District of Columbia Circuits is likewise meritless. In fact, most of the decisions that petitioner cites were based on former Rule 4(j), which was effective until December 1, 1993, and which indeed only allowed extensions for good cause. See McDonald v. United States, 898 F.2d 466, 467-468 (5th Cir. 1990); Smith-Bey v. Cripe, 852 F.2d 592, 593 (D.C. Cir. 1988); United States v. Gluklick, 801 F.2d 834, 837 (6th Cir. 1986), cert. denied, 480 U.S. 919 (1987); Wei v. Hawaii, 763 F.2d 370, 372 (9th Cir. 1985); Morse v. Elmira Country Club, 752 F.2d 35, 41 (2d Cir. 1984); Dean v. KIS Corp., 121 F.R.D. 74, 77 (N.D. Ill. 1988); Bernard v. Strang Air, Inc., 109 F.R.D. 336, 337 (D. Neb. 1985); Madden v. Cleland, 105 F.R.D. 520, 526 (N.D. Ga. 1985); see also Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1233-1234 (1st Cir. 1991) (discussing Fed. R. Civ. P. 4(c)(2)(C)(i) and (ii)). Moreover, far from supporting his contention that the district court lacked the discretion to grant an extension in this case, two of the cases petitioner cites hold that Rule 4(m) "broadens the district court's discretion by allowing it to extend the time for service even when the plaintiff has not shown good cause." Espinoza v. United States, 52 F.3d 838, 840-841 (10th Cir. 1995) (emphasis added), cert. denied, 520 U.S. 1176 (1997); Petrucelli v. Bohringer & Ratzinger, GMBH, 46 F.3d 1298, 1305 (3d Cir. 1995). Furthermore, the Espinoza and Petrucelli decisions are, with one exception, in accord with the conclusion of every court of appeals that has ruled on the matter. See Troxell v. Fedders of North Am., Inc., 160 F.3d 381, 383 (7th Cir. 1998); De Tie v. Orange County, 152 F.3d 1109, 1111 n.5 (9th Cir. 1998); Thompson v. Brown, 91 F.3d 20, 21 (5th Cir. 1996); Adams v. AlliedSignal Gen. Aviation Avionics, 74 F.3d 882, 887 (8th Cir. 1996).

The Fourth Circuit, alone, has taken the view that Rule 4(m), like its predecessor, requires a showing of good cause for an extension. Mendez v. Elliot, 45 F.3d 75, 78 (1995) ("if the complaint is not served within 120 days after it is filed, the complaint must be dismissed absent a showing of good cause"). The Mendez court based its conclusion on the premise that when the Federal Rules of Civil Procedure were revised in 1993, "Rule 4(j) was edited without a change in substance and renumbered as Rule 4(m)." Ibid. The court came to that conclusion, however, without discussing the text of Rule 4(m) or the Advisory Committee's Notes to that rule. For this reason, and in light of this Court's contrary conclusion concerning the meaning of Rule 4(m) in Henderson, the continued validity of the Fourth Circuit's decision in Mendez is in substantial doubt. Indeed, on these bases, and in view of "the other circuit courts' unanimous rejection of the Mendez court's position," one district court in the Fourth Circuit has "conclude[d] that Mendez is no longer good law and that, if given the opportunity, the Fourth Circuit perforce would adopt the interpretation of Rule 4(m) held by the Supreme Court and the other circuit courts." Hammad v. Tate Access Floors, Inc., 31 F. Supp. 2d 524, 527-528 (D. Md. 1999). The Fourth Circuit has already demonstrated an inclination to take the course predicted in Hammad, albeit in two unpublished per curiam decisions.

In the first, the [Fourth Circuit] court concluded that, despite the rule of Mendez, "the district court, in its discretion, could have extended the time for proper service of process, notwithstanding its apparent belief to the contrary." Scruggs v. Spartanburg Reg'l Med. Ctr., No. 98-2364, 1999 WL 957698, at *2 (4th Cir. Oct. 19, 1999) (unpublished). The Scruggs court based that conclusion on this Court's observation in Henderson that Rule 4(m) allows courts to extend the time for service even absent a showing of good cause. Ibid. (citing Henderson, 517 U.S. at 658 n.5). Although the Fourth Circuit correctly noted that that observation was not an actual holding in Henderson itself, the court of appeals viewed it "as persuasive as to the meaning of Rule 4(m)." Ibid. Nevertheless, because it saw the district court's error as essentially harmless, the Fourth Circuit declined to remand for the district court to apply the "rule suggested by the Court in Henderson," and indeed questioned "whether we would even have the authority, as a panel, to overrule our court's precedent in Mendez, given that the Supreme Court's statement in Henderson as to the meaning of Rule 4(m) was dicta." Id. at *2 & n.2.

In the second case, the Fourth Circuit, citing Henderson, stated that "[e]ven if a plaintiff does not establish good cause [for failing to effect service within the 120-day period], the district court may in its discretion grant an extension of time for service." Giacomo-Tano v. Levine, No. 98-2060, 1999 WL 976481, at *1 (Oct. 27, 1999) (unpublished). The court, however, neither mentioned Mendez, nor remanded for application of the rule of Henderson, despite the fact that the district court apparently dismissed solely on the basis that "good cause" was not shown. See id. at *2. Thus, neither Scruggs nor Giacomo-Tano purports to overrule Mendez or apply the rule of Henderson, and indeed, as unpublished decisions, neither case is binding precedent in the Fourth Circuit. Nevertheless, those cases cast strong doubt on the continued validity of the Mendez rule in the Fourth Circuit, the only circuit court decision in conflict with the decision in this case and the unanimous view of the other circuits that have addressed the issue. There is no occasion for this Court to intervene before the Fourth Circuit is given a full opportunity to determine-in a published decision, and considering the issue en banc if necessary-whether to continue to follow Mendez in light of Henderson. Accordingly, further review in this case to resolve the asserted conflict is unwarranted.

CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

SETH P. WAXMAN
Solicitor General
HENRY L. SOLANO
Solicitor of Labor
ALLEN H. FELDMAN
Associate Solicitor
ELIZABETH HOPKINS
Attorney Department of Labor

DECEMBER 1999