# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LUKAS, NACE, GUTIERREZ & SACHS, CHARTERED, | |
| Plaintiff/Counterclaim Defendant, | |
| v. | Civil Action No. 99-0395 (JHG) |
| WARREN HAVENS, *et al.*, | FILED |
| Defendants/Counterclaim Plaintiffs. | MAR 2 8 2001 |
| | NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lukas, Nace, Gutierrez & Sachs, Chartered ("the Lukas firm") has filed for partial summary judgment against defendants Warren Havens and SunCom Mobile & Data, Inc. ("SunCom"). The Lukas firm asks for summary judgment on Mr. Havens' three counterclaims for breach of fiduciary duty and legal malpractice on the grounds that Mr. Havens has failed to show damage and failed to proffer expert testimony;[1] for summary judgment on SunCom's malpractice counterclaim, based on its failure to show damage; and for a ruling that Mr. Havens is personally liable to the Lukas firm for SunCom's legal fees.[2]

---

[1] The Lukas firm also asked for summary judgment on Mr. Havens' fourth counterclaim, which alleged breach of oral contract, however, Mr. Havens has withdrawn his counterclaim. *See* Havens' Opposition ¶ 5.

[2] The defendants have asked for an oral hearing, but the Court finds an oral hearing to be unnecessary.

I. Factual Background

A. The SunCom Matter

Mr. Havens is a principal of SunCom, which is a California corporation. In December 1993 the Lukas firm began its representation of a three-person partnership, which included Mr. Havens, and which was incorporated as SunCom shortly thereafter. SunCom sought approval from the Federal Communications Commission ("FCC") for a regional network of wireless communication systems in the 220 MHz band. According to the defendants, the Lukas firm was retained primarily to petition the FCC for relief, and the Lukas firm advised defendants that there was a very strong probability that relief would be granted. In reliance on that assurance, SunCom made expenditures during 1994 and 1995 in pursuit of its business plan.

By early 1995, SunCom was running low on funds, and was behind on its payments of legal fees owed to the Lukas firm. However, the defendants desired that the Lukas firm would continue pursuing relief from the FCC. Both orally and through written communications from Mr. Havens, the parties discussed an arrangement by which Mr. Havens and another individual would ensure payment of the legal fees. The Lukas firm indicates that it continued to represent SunCom until November 1998, although defendants contend that those legal services "effectively ceased" in the end of 1996. Defendants allege that SunCom was damaged as a result of the Lukas firm's malpractice in the matter of pursuing petitions for relief from the FCC. SunCom continues to have

2

value as an ongoing business, and has a financial interest in other firms in the business of wireless communication systems.

B. The Highland Matter

Mr. Havens and his sister, Gayle Havens, were minority shareholders in Highland Cellular, Inc. ("Highland"), a Delaware corporation licensed to provide cellular telephone service. In November 1995 Mr. Havens and Gayle Havens retained the Lukas firm to represent them in litigation against Highland's controlling shareholder, Faramarz Attar. At the time, Mr. Attar and his children owned 72% of Highland's shares. Under the shareholder agreement, certain transactions could not occur without the consent of a supermajority of 80% of the shareholders. *See* Havens' Amended Answer and Counterclaim ¶ 36-37. In November 1997 Gayle Havens decided to abandon the Highland litigation and sell her stock to Mr. Attar, which would give Mr. Attar a supermajority interest in Highland. She informed Mr. Havens of her intention, and indicated that the sale would not be consummated for about another six months. The Lukas firm gave Gayle Havens confidential advice regarding the contemplated sale, and Mr. Havens contends that this created a conflict of interest. Ms. Havens used a portion of the proceeds of the sale to pay legal fees owed to the Lukas firm.

II. Personal Guaranty

The Lukas firm asks the Court to find that Mr. Havens is "personally liable for the legal fees SunCom owes to the Lukas firm to the same extent as SunCom." The Lukas

3

firm contends that an enforceable guaranty agreement exists between Mr. Havens and itself, and relies on that guaranty as a basis for Mr. Havens' liability on some of their claims. The defendants counter that the complaint does not include a claim for breach of a guaranty agreement, and that the alleged guaranty fails for lack of consideration and noncompliance with the statute of frauds. Mr. Havens admits to making an oral promise, but contends that his promise was only to pay the bill if SunCom failed and could not pay its bill, rather than to take on the responsibility for payment to the same extent as SunCom.

Summary judgment is appropriate where the moving party establishes that there are no genuine issues of material fact in dispute, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in a light most favorable to the nonmoving party. Summary judgment cannot be granted if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Shapiro, Lifschitz & Schram v. Hazard*, 97 F.Supp.2d 8, 11 (D.D.C. 2000) (internal citation and quotations omitted); *see also Aka v. Washington Hospital Center*, 156 F.3d 1284, 1288 (D.C. Cir. 1998).

On April 16, 1995, Mr. Havens wrote Mr. Gutierrez, a partner of the Lukas firm. In the letter, he communicated a desire to discuss the legal "bill," and stated that he and

4

another individual, Channing Jones:

> will personally cover it regardless of SunCom success or not. We may soon close a private placement for more working capital and prefer to draw from that. In any case, we should discuss it with you to keep relations sound.

Mr. Gutierrez indicated that "there were a number of verbal discussions on this matter." *See* Gutierrez depo. at 172. Mr. Havens admits that he made an oral promise to the Lukas firm that he would pay "amounts owed by SunCom to Lukas Nace if SunCom failed and could not pay its bill to the Lukas Nace after pursuing its business plan." *See* Statement of Facts in Dispute ¶ 6; *see also* Mr. Havens' depo. ¶ 6. Mr. Havens referenced the personal guaranty in two more letters. His December 8, 1995 letter references an "alternative proposal" regarding the legal fees, and that proposal states that the "existing arrangement is that Channing and I will cover the bill if SunCom can't . . . we will continue to stick to the existing deal, or, would agree to the following alternative." Mr. Gutierrez recalled that, in response, he indicated that the firm was satisfied with the existing arrangement. In his December 13, 1995 letter, Mr. Haven indicated that he would be "happy to stick to our original deal of backing up SunCom to cover your bills." The Lukas firm continued to represent SunCom.

A. Failure to State a Claim

Before addressing the defendants' substantive challenges to the guaranty, the Court must determine whether plaintiff sufficiently stated a claim based on Mr. Havens' guaranty. For the most part, the demands of the second amended complaint ("the

5

complaint") directed at Mr. Havens in relation to the SunCom matter appear to be premised on the fact that Mr. Havens retained the Lukas firm's services, and the allegation that Mr. Havens is SunCom's alter ego. *See* Complaint ¶ 3, 7. In contrast, Mr. Channing Jones is identified early in the complaint as having "personally guaranteed that Plaintiff would be paid for the services performed by Plaintiff on behalf of SunCom and Havens." Complaint ¶ 4. The statement of facts in the complaint does include references to Mr. Havens' promise to pay the legal bill for the SunCom matter, although it is unclear whether the agreement referenced is the retainer itself or some additional promise. *See* Complaint ¶ 8 ("[w]ith respect to the SunCom Matter, Defendant Havens agreed, both individually and on behalf of Defendant SunCom Mobile and Data Systems, Inc., to pay Plaintiff on a hourly basis, for services rendered ...").

The complaint includes five counts. The first and second counts are against Mr. Havens alone, for breach of contract and *quantum meruit* as to both the SunCom and Highland matters. *See id.* ¶ 17-18, 23 (Mr. Havens entered retainer agreements and received legal services). The third count is against Mr. Havens for account stated. The fourth and fifth counts address only the SunCom matter, and are against Mr. Havens, SunCom, and Channing Jones. Count four, for breach of contract, premises Mr. Havens' liability on his entry into a retainer agreement, and Mr. Jones' liability on his personal guaranty. *See id.* ¶ 32. In contrast, count five, for *quantum meruit*, premises both Mr. Havens' and Mr. Jones' liability on their personal guarantees of payment for work on

6

behalf of SunCom, and on their acceptance and enjoyment of services rendered to SunCom. *See id.* ¶ 36-37.

A complaint must include "a short and plaint statement of the claim showing that the pleader is entitled to relief, and . . . a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). The complaint plainly demands that Mr. Havens pay the legal fees owed by SunCom, and asserts that Mr. Havens personally guaranteed that the Lukas firm would be paid for its work on SunCom's behalf. More artful drafting would have clearly included the allegation of Mr. Havens' personal guaranty in the statement of facts section, and coupled the alleged guaranty with the counts alleging breach of contract.[3] However, the complaint was sufficient to place the defendants on notice that the Lukas firm is demanding payment from Mr. Havens, and alleges that Mr. Havens personally guaranteed payment for the SunCom matter.

B. Challenges to the Guaranty

The defendants contest the existence of the guaranty agreement, its enforceability, and the exact nature of what was promised. Assuming that there is a valid, enforceable, guaranty, disputed issues of fact prevent the Court from ascertaining the terms of the guaranty.

---

[3] The plaintiff moved to file a third amended complaint which would have corrected its oversight. Defendants objected that the new complaint added new allegations, while the plaintiff's stated reason for the amendment was merely to "correct minor errors," clarify, and reorganize. The Court held that it was unnecessary to allow the filing of a third amended complaint for those limited purposes.

7

The defendants assert that Mr. Havens orally promised to pay only if SunCom failed and could not pay its bill. Plaintiff attacks defendants' contention by pointing to the language in the first letter, wherein Mr. Havens guaranteed payment "regardless of SunCom success or not." Plaintiff argues that this established the terms of the agreement. However, where the terms of a contract are ambiguous, the Court may look to evidence of the parties' intent. *See Brown v. Union Station Venture Corp.*, 727 A.2d 878, 881 (D.C. App. 1999). In countering defendants' statute of frauds argument, plaintiffs did not assert that the first letter constituted a contract, but instead relied on all three letters. The second and third letters refer to "backing up SunCom" and covering the bill "if SunCom can't," which create an ambiguity. Whether the letters constitute the guaranty or the guaranty itself was oral, and merely memorialized by the letters, a factual dispute remains as to the exact interpretation of that agreement. *See Hackney*, 418 A.2d at 1065 n.1 (courts may look to parol evidence where document is not a complete, final, integrated statement of the agreement). It is unclear whether Mr. Havens promised to be equally responsible for the legal fees SunCom owed to plaintiff, or whether he promised to be secondarily liable, if SunCom failed and could not pay. Summary judgment regarding the guaranty is denied.[4]

---

[4] If the defendants had moved for summary judgment regarding the existence or enforceability of the guaranty, the Court would be obliged to determine those issues. However, because the defendants have successfully opposed the Lukas firm's motion regarding the guaranty, it is unnecessary to address the defendants' other arguments.

8

III. Mr. Havens' Counterclaims

In addition to asking for partial summary judgment on its own claims against the defendants, the Lukas firm asks for summary judgment against Mr. Havens on the counterclaims he has brought. Mr. Havens' answer includes three counterclaims regarding the Highland matter, one for breach of fiduciary duty and two for legal malpractice.[5] For all three counterclaims, Mr. Havens bears the burden to establish the standard of care owed by the Lukas firm, a breach of that standard, and damage proximately caused by the breach. *See Shapiro, Lifschitz & Schram*, 97 F.Supp.2d at 11; *Williams v. Callaghan*, 938 F.Supp. 46, 50 (D.D.C. 1996). The first counterclaim alleges breaches of fiduciary duty stemming from the conflict of interest which arose when Gayle Havens decided to sell her shares in Highland. The second counterclaim alleges legal malpractice, including the failure to advance the Highland litigation, failure to procure experts, and failure to promptly advise Mr. Havens regarding legal fees. The third counterclaim is premised on the Lukas firm's failure to introduce a certain item into evidence during an arbitration proceeding.

A. Expert Testimony for the Second and Third Counterclaims[6]

---

[5] As noted earlier, Mr. Havens' fourth counterclaim has been withdrawn.

[6] Mr. Havens' first counterclaim is for breach of fiduciary duty, which, like claims of legal malpractice, would ordinarily require expert testimony to establish the standard of care. However, the Lukas firm has not clearly challenged the counterclaim for breach of fiduciary duty on these grounds. *See* Statement of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Points and Authorities") at 2-3 (asking for summary judgment on the "remaining claims of malpractice"), and at 14 ("the Lukas firm is entitled to

9

The plaintiffs have moved for summary judgment on Mr. Havens' second and third counterclaims, asserting that because Mr. Havens failed to designate an expert, he will be unable to prove an essential element of his counterclaims. In the District of Columbia, claims of legal malpractice must be supported by expert testimony regarding the applicable standard of care "unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. App. 1982). Mr. Havens' allegations against the Lukas firm, including failure to advance the Highland litigation, failure to procure experts for that litigation, and failure to introduce important evidence upon request, involve complex issues and questions of tactics. *See Applegate v. Dobrovir, Oakes & Gebhardt*, 628 F.Supp. 378, 382-83 (D.D.C. 1985), *aff'd without published opinion*, 809 F.2d 930 (D.C. Cir. 1987) (considering complexity of the litigation; also finding that introduction of specific items of evidence is within a lawyer's discretion).

The other allegations of malpractice, failure to advise Mr. Havens of the amount of legal fees according to the agreed-upon schedule, and failure to reduce its fees after

---

summary judgment on the Second and Third Claims"); Defendants' Opposition at 21-22 (treating plaintiff's argument regarding need for expert testimony as directed only at legal malpractice counterclaims); Plaintiffs' Reply at 16 (same), *but see* Plaintiff's Points and Authorities at 13 (in reference to claims for malpractice in addition to claim for breach of fiduciary duty, "[a]ll of these fail . . . for lack of expert testimony"). Both parties have focused exclusively on the need for expert testimony in regard to the second and third counterclaims for malpractice, and those counterclaims are premised on different alleged acts of malpractice than the first counterclaim. The Court does not now decide whether expert testimony would be necessary to sustain Mr. Havens' first counterclaim.

10

promising to do so, do not so obviously cry out for expert testimony. However, in evaluating the allegations as malpractice claims (as opposed to breach of the agreements, which would primarily turn on factual issues), the instances of malpractice are similar to those for which expert testimony is demanded, and quite unlike the types of malpractice which may be established without expert testimony. *Compare Shapiro, Lifschitz & Schram*, 97 F.Supp.2d at 11-12 (expert necessary where appropriateness of fees and costs is disputed) *with Hamilton v. Needham*, 519 A.2d 172 (D.C. App. 1986) (no expert required where, contrary to decedent's instructions, attorney dropped a clause of the will in the final version). Summary judgment will therefore be granted to the Lukas firm on Mr. Havens' second and third counterclaims.

B. Damage

The Lukas firm challenges Mr. Havens' first counterclaim by asserting a failure to show causation and a failure to provide an adequate measure or proof of the damage itself. Mr. Havens relies on a declaration submitted by Gayle Havens to show causation.[7] In her declaration, Ms. Havens states that she relied on the Lukas firm for advice at all

---

[7] Plaintiff challenges both Gayle Havens' declaration and an affidavit by Arnold Leong. The Court does not rely on Mr. Leong's affidavit. As to Ms. Havens' declaration, the plaintiff notes that neither conclusory, hypothetical statements, nor a statement contradicting one's own prior deposition testimony, are sufficient to create a genuine issue of material fact. *See Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991) (a party may not create an issue of fact by contradicting prior sworn testimony; noting that "some courts" have extended the doctrine to include non-party witnesses). However, Ms. Havens' declaration is not wholly conclusory, and while her earlier deposition testimony casts certain of her statements into doubt, it does not create a direct contradiction.

11

times, and that but for their advice, and their failure to advise her of the potential conflict of interest created by her decision to sell, she would not have sold her shares to Mr. Attar. The advice included telling Ms. Havens that she had a right to proceed with the sale, and that Mr. Havens would be able to pursue the Highland matter unimpaired.[8] At Ms. Havens' behest, the Lukas firm kept her contemplation of a sale to Mr. Attar confidential from Mr. Havens, yet the Lukas firm did not advise Ms. Havens of the potential conflict of interest the situation created, nor did they withdraw from representing the Havens siblings. Gayle Havens' assertion that she would not have proceeded with the stock sale if not for these actions and inactions by the Lukas firm create a genuine issue of fact as to causation.[9]

The Lukas firm also contends that Mr. Havens' claim for breach of fiduciary duty fails because expert opinion evidence is required to establish that he was damaged by his sister's stock sale. The defendants argue that the value of Mr. Havens' Highland stock decreased significantly when Mr. Attar gained supermajority control, because Mr. Attar then "had the power, *inter alia*, to cease paying distributions to Defendant, to prevent Defendant from being or selecting a director, and to take other actions adverse to

---

[8] Gayle Havens was aware that Mr. Attar would gain supermajority status as a result of her stock sale.

[9] Mr. Havens also attempts to rely on Gayle Havens' declaration as support for the contention that damage was caused by the malpractice alleged in the other two counterclaims. *See* Defendants' Reply at 10 (unfair billing, failure to prosecute the case, failure to get experts, failure to introduce evidence in arbitration). However, those assertions are reliant on a showing of malpractice, and the Court has held that expert testimony is necessary to make that showing.

12

Defendant's interests." Amended Answer and Counterclaim of Warren Havens ¶ 41. In order to recover, Mr. Havens must establish the fact of damage and provide a reasonable estimate of that damage. He is not required to prove the amount of his damages precisely, but if proof of the amount of damage were vague and speculative, he would, at best, be entitled only to nominal damages. *See Bedell v. Inver Housing, Inc.*, 506 A.2d 202, 205 (D.C. App. 1986).

Defendants seek to prove the extent of this damage with Mr. Havens' own testimony regarding the value of the stock. Mr. Havens' lay opinion testimony as to the value of the stock, before and after Gayle Havens' sale, is admissible under Fed. R. Evid. 701.[10] His ownership of the property in question gave him experience with that specific property, and his knowledge and experience in the area of business Highland was engaged in gives him some awareness of the standards by which the property must be evaluated. *See Hartford Accident and Indemnity Co. v. Dikomey Manufacturing Jewelers, Inc.*, 409 A.2d 1076, 1078-79 (D.C. App. 1979) (in qualifying a witness, look to experience, knowledge of the object to be valued, knowledge of the standard of value); *Mark Keshishian & Sons, Inc. v. Washington Square, Inc.*, 414 A.2d 834, 838 n.6 (D.C. App. 1980) (owner's estimate of his business' worth is admissible to show its value); *Asplundh Manufacturing Division v. Benton Harbor Engineering*, 57 F.3d 1190, 1197 (3d Cir.

---

[10] Rule 701 limits lay opinion testimony "to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R. Evid. 701.

13

1995) (testimony regarding the value of one's property is "quintessential Rule 701 opinion testimony").

Expert testimony is required "when the subject matter at issue is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman." *Columbus Properties, Inc. v O'Connell*, 644 A.2d 444, 447 (D.C. App. 1994) (internal citations and quotations omitted). "The causes of action that *require* expert testimony are rare," and market value is generally not a question that demands expert evidence. *See id.* The valuation of minority share in a corporation which is not publicly traded is a complex issue, and it may be that Mr. Havens' testimony will not prove sufficient to establish a reasonable estimate of his damages. It is difficult to determine that issue now, because the defendants' showing on damages combines the damages from the alleged breaches of fiduciary duty and malpractice in all three counterclaims, yet at present only the first of those counterclaims has survived. In order to prevail, Mr. Havens would have to show damages proximately caused by the specific breach alleged in the first counterclaim. The Court will not now rule out the possibility that he may do so.

IV. SunCom's Counterclaim

A claimant must provide a reasonable estimate of the damages alleged. *See Bedell*, 506 A.2d 202. Defendants allege that, absent the plaintiff's malpractice, SunCom would not have expended its resources, from late 1993 until 1996, pursuing a business plan

14

which was dependant on the success of the Lukas firm's efforts to obtains relief from the FCC on SunCom's behalf. The defendants propose that net operating losses for 1994 and 1995, less the value of its assets as of December 31, 1995, constitute its damages from the Lukas firm's malpractice in the SunCom matter. The plaintiff is free to attack the defendants' claim by showing that all or part of SunCom's expenditures contributed to the ongoing value of the company after December 31, 1995, and by arguing for a decrease in the amount of damages based on that ongoing value. Indeed, it may be that the facts surrounding SunCom's continuing business concerns will make defendants' current damage calculation impossible to sustain. In that case, defendants will be required to provide evidence regarding SunCom's ongoing value as it relates to its earlier expenditures in order to establish a reasonable estimate of damages, or be reduced to receiving nominal damages if they prevail on their counterclaim. In light of the present disputes, summary judgment is not warranted for SunCom's counterclaim.[11] It is therefore

**ORDERED** that the defendants' request for an oral hearing is denied; it is

**FURTHER ORDERED** that the plaintiff's motion for partial summary judgment as to defendant Warren Havens' second and third counterclaims is granted; and it is

**FURTHER ORDERED** that plaintiff's motion for partial summary judgment is

---

[11] The Lukas firm also challenges the defendants' damage calculation because it fails to incorporate SunCom's recovery from another legal malpractice claim arising from the same period of SunCom's operations. That recovery must be taken into consideration, but it is not clear that expert testimony will be necessary to accomplish that task.

denied in all other respects; and it is

**FURTHER ORDERED** that, in light of the fact that this case appears to be in a good position for settlement to be discussed, the parties are ordered to discuss the matter among themselves in an attempt to reach settlement between now and Friday April 27, 2001. If that attempt fails, the parties are to contact Magistrate Judge Kay on or before Thursday, May 3, 2001, for the purpose of attempting to effectuate a settlement..

IT IS SO ORDERED.

March 27, 2001.

JOYCE HENS GREEN
United States District Judge