UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LUKAS, NACE, GUTIERREZ & SACHS, )
CHARTERED )
)
    Plaintiff, )
)   Civil Action No. 99-0395 (LFO)
    v. )
)
WARREN HAVENS, ET AL. ) **FILED** ./
)
    Defendants. ) ꓚUL 2 3 2002
)

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM

    Lukas, Nace Gutierrez & Sachs, Chartered ("Lukas Nace" or "the Lukas firm") sued its

former clients, Warren Havens and his company, SunCom Mobile & Data, Inc. ("SunCom") to

collect unpaid legal fees. Havens and SunCom counterclaimed, alleging legal malpractice. The

parties signed an agreement settling their claims against each other on February 26, 2002. Two

matters are pending before the court: (1) plaintiff's motion to enforce that settlement agreement

and (2) a May 29, 2002 order directing defendants to show cause why plaintiff's proposed order,

attached to its May, 24, 2002 praecipe, which would dismiss this case with prejudice and provide

for a general release of claims, should not be entered. Defendants have failed to show sufficient

cause why plaintiff's proposed order should not be entered. Accordingly, that order shall be

entered, along with an order granting plaintiff's motion to enforce the remaining terms of the

February 26 settlement agreement.

**I.**

    Trial in this case was continued to allow the parties to engage in a last-ditch mediation

effort before the Honorable Joyce Hens Green. That mediation produced a hand-written



98

settlement agreement, signed by Thomas Gutierrez on behalf of the plaintiff and by Havens on

behalf of the defendants. The settlement agreement set forth four essential points. The first point

stated that: "Parties (SunCom, W. Havens, Lukas Nace law firm) will execute general releases."

The second point provided that all claims and counterclaims would be dismissed with prejudice.

The third and fourth points addressed payment arrangements.

    The parties have been unable to finalize the language of the general release called for by

the settlement agreement. After more than a month of unsuccessful negotiations, plaintiff filed a

motion to enforce the settlement agreement on March 27, 2002. Defendants opposed the motion

solely on the basis of the parties' inability to arrive at mutually acceptable language for the

agreed-to general release. The parties submitted competing versions of the general release

language and draft settlement agreement, under seal, for the court's review on May 10, 2002.

Following a telephone status conference on May 23, 2002, Lukas Nace filed a praecipe

containing a proposed order to dismiss the complaint and counterclaims in this action with

prejudice that incorporated the language quoted below. Lukas Nace proposes a general release

that encompasses:

> ... any and all liability, rights, claims, counterclaims, damages, costs or
> controversies (whether direct or indirect, known or unknown, suspected or
> unsuspected), including but not limited to any claims and controversies of any
> kind which were or could have been raised in this case, dating from the beginning
> of time up to and through the date of this order.

Pl.'s Proposed Order at 1.

    On May 29, 2002, the court issued an order requiring defendants to show cause why this

proposed order should not be entered. On June 14, 2002, defendants responded with a

declaration from Havens.

In his declaration, Havens states that he did not bargain for or agree to the general release proposed by plaintiff, but only "bargained for and agreed to a release of those claims raised in and related to this litigation." Havens Decl. at ¶ 6. He also objects to the release of claims that are currently unknown or unsuspected. He proposes the following alternative release:

> [I]n accordance with the provisions of the settlement agreement, the parties and their agents and assigns shall be mutually released and forever discharged by each of party (and anyone who may claim by or through them) from any and all liability, rights, claims, counterclaims, damages, costs, or controversies that were known or suspected or should have been known or suspected, which in any way relate to, were raised in, or could have been raised in that certain action pending in the United States District Court for the District of Columbia, as Civil Action No. 99-0395, entitled Lukas, Nace, Gutierrez & Sachs, Chartered v. Warren Havens, et al.

Havens Decl., ¶ 10.

## II.

"A settlement agreement is a contract and therefore is generally governed by principles of contract law." Johnson v. Mercedes-Benz, USA, LLC, 182 F. Supp. 2d 58, 62 (D.D.C. 2002) (citing Simon v. Circle Assocs., Inc., 753 A.2d 1006, 1012 (D.C. 2000)). "A basic principle of contract law ... is that, presumptively, written contracts are to be enforced according to their terms, unless the writing is ambiguous or there is fraud, duress, or mutual mistake." Sutton v. Banner Life Ins. Co., 686 A.2d 1045, 1051 (D.C. 1996).

There is no ambiguity about the phrase: "Parties (SunCom, W. Havens, Lukas Nace law firm) will execute general releases." To a sophisticated businessperson like Havens, who was not only present at the settlement negotiations but was also represented by counsel, it should be obvious that a general release encompasses more than claims that were or could have been raised in the extant lawsuit. "'The very nature of a general release is that the parties desire to settle all

3

matters forever. A general release ... not only settles enumerated specific differences, but claims of every kind or character, known and unknown.'" Zandford v. Prudential-Bache Securities, Inc., 112 F.3d 723, 727 (4th Cir. 1997) (quoting Virginia Impression Prods. Co., Inc. v. SCM Corp., 448 F.2d 262, 265 (4th Cir. 1971) (internal quotations omitted)). Although the verbiage of general releases may differ, such releases invariably encompass past, present, and future claims that could be brought on the basis of the all interactions between the parties up until the time the settlement agreement is entered into.[1] Once the parties have agreed to a general release, as they did here, it is assumed that all issues and claims not specifically exempted are included within the scope of the release. "The mere fact that an agreement providing for a general release is silent with respect to certain matters in dispute at the time the release was executed 'does not mean that the obligations and documents not expressly mentioned or integrated were not released.'" Federal Deposit Ins. Corp. v. Parvizian, Inc., 944 F. Supp. 1, 4 (D.D.C. 1996) (quoting Hershon v. Gibraltar Bldg. & Loan Ass'n, Inc., 864 F.2d 848, 853 (D.C. Cir. 1989)).

In attempting to show cause why he should not be bound by the terms of the February 26 settlement agreement, which unambiguously calls for each party to execute a general release, Havens essentially raises a defense of unilateral mistake. He acknowledges that "[t]he parties ...

---

[1]   See, e.g., Sarvis v. Soulsby, No. Civ. A. 97-123, 1997 WL 74555, at * 2 ("Capt. Hennessy does hereby irrevocably and unconditionally release, acquit, exonerate and forever discharge Chief Soulsby, and any of his officers, employees, attorneys and agents from all charges, complaints, class actions, appeals, grievances, claims or causes of action of whatever nature, that Capt. Hennessy ever had or now has against Chief Soulsby, including but not limited to any claim arising out of, and as a consequence of, for or by reason of, resulting from, or relating in any way to (a) the facts, circumstances, claims, injuries, and occurrences alleged in and/or giving rise to Capt. Hennessy's complaints or court actions; and/or (b) Capt. Hennessy's employment with the Metropolitan Police Department, D.C., before the execution of this Agreement."

agreed to execute a general release," Havens Decl. at ¶ 5, but claims he only bargained for and agreed to a release of claims related to this litigation. He argues that "[n]o one at the mediation or at any other time prior to the signing of the settlement agreement raised the prospect of releasing unknown or wholly unsuspected claims." Id. at ¶ 7.

Havens' unilateral mistake, or more precisely, his unilateral misunderstanding of a legal term, is not sufficient cause to disturb the parties' settlement agreement, including the provision for a general release. The impact of a unilateral mistake on a settlement agreement or other contract is a question of state law. See, e.g., Cruz v. American Airlines, 150 F. Supp.2d 103, 116 (D.D.C. 2001). Although the February 26 settlement agreement does not specify which state's law governs the interpretation of the agreement, choice of law rules mandate that the contract be interpreted under the law of the District of Columbia.[2]

This court has jurisdiction over the parties' dispute due to diversity in citizenship and the amount in controversy, which exceeds $75,000. See 28 U.S.C. § 1332. "A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state (or district or territory), in this case the District of Columbia." Liberty Mut. Ins. Co. v. Travelers Indem. Co., 78 F.3d 639, 642 (D.C. Cir.1996) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). District of Columbia courts apply the law of the state with the more substantial interest in the matter. See Nationwide Mut. Ins. Co. v. Richardson, 270 F.3d 948, 953 (D.C. Cir. 2001) (internal citations omitted).

---

[2]      In the proposed settlement agreements filed by the parties under seal, plaintiff proposed that District of Columbia law govern the settlement. Defendants removed this choice of law provision from their version of the agreement in its entirety, without substituting another state.

5

In this case, the District of Columbia has a more substantial interest than any other potential jurisdiction. Lukas Nace is a professional corporation chartered under the laws of the District of Columbia. Defendants entered into a contract with the Lukas firm, in the form of a retainer agreement, for legal services to be provided by Lukas Nace primarily in connection with proceedings in this jurisdiction. The primary representation involved an application and administrative hearing before the Federal Communications Commission, and ultimately an appeal the D.C. Circuit. "[T]he District of Columbia has a substantial interest in providing a forum to redress wrongs inflicted upon its citizens by clients who fail to pay for professional services supplied in the District of Columbia by District of Columbia law firms." Fisher v. Bander, 519 A.2d 162, 164 (D.C. 1986).

Under District of Columbia law, unilateral mistake can be a defense to the enforcement of a contract where "one party is reasonably mistaken about a material aspect of the contract and ... the other party knew or should have known of that erroneous understanding." Flippo Construction Co., Inc. v. Mike Parks Diving Corp., 531 A.2d 263, 271 (D.C. 1987); see also Sutton, 686 A.2d at 1051. Neither circumstance is present here.

The meaning of the phrase "general release" is well-defined. A sophisticated businessperson, particularly one who present at the settlement negotiations and represented by counsel, can reasonably be expected to be aware of the meaning and the implications of a general release, or, if unaware, to consult his attorney for guidance. Havens' mistaken belief that a general release bars the future litigation of only known or suspected claims related to the present lawsuit is not reasonable.

6

Havens does not claim that Lukas Nace was aware, or should have been aware, of his misapprehension. His statement, that the parties agreed to execute a general release but never raised the subject of releasing unknown or unsuspected claims at the February 26, 2002 settlement meeting, supports an inference that Lukas Nace was ignorant of Havens' mistaken belief that a general release applies only to known claims related to pending litigation. See Havens Decl. at ¶¶ 5,7. The law firm, for its part, perceives Havens as possessing "extensive legal knowledge," due to his participation in other lawsuits and his position as assistant director for legal affairs for the Society of Krishna Consciousness. Pl. Pretrial Statement at 6, n.5. In light of that perception, it follows that the law firm had no reason to know that Havens was ignorant of the scope of a general release.

In cases where a party's mistake reflects "a substantial departure from the terms of the contract as written," Flippo, 531 A.2d at 272, such that it is questionable whether a meeting of the minds has occurred, District of Columbia courts, in addition to looking at the reasonableness of a party's mistake and the opposing party's knowledge of that mistake, are guided by § 153 and § 154 the Restatement (Second) of Contracts (1981). See Flippo, 531 A.2d at 272.

Havens may not void the settlement agreement under the Restatement's approach. Section 153 states that a party who makes a unilateral mistake may void the contract if he does not bear the risk of mistake under § 154 and either (a) enforcement of the contract against him would be unconscionable or (b) the other party had reason to know of the mistake or caused the mistake. See Restatement (Second) of Contracts § 153. It is not necessary to resolve whether Havens bears the risk of his mistake under § 154, for even if he does not, he cannot show grounds to void the contract under § 153(a) or (b).

7

Havens does not meet the requirement set forth in § 153(b) because, as previously discussed, Lukas Nace did not have reason to know of the mistake and Havens does not claim the law firm is at fault for his misunderstanding. Havens is also not entitled to void the contract on the basis of unconscionability under § 153(a). "A party seeking to avoid enforcement of a contract on the grounds of unconscionability usually must prove 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" Woodfield v. Providence Hosp, 779 A.2d 933, 937 (D.C. 2001) (quoting Urban Invs., Inc. v. Branham, 464 A.2d 93, 99 (D.C.1983) (internal quotation omitted)). The settlement agreement was negotiated at arms' length by the parties, both represented by counsel, in the antithesis of consumer contracts of adhesion which are more commonly scrutinized for unconscionability. See Riggs National Bank v. District of Columbia, 581 A.2d 1229, 1251 (D.C. 1990). Havens is also unable to demonstrate that the terms of the general release unreasonably favor Lukas Nace, given that the release applies equally to both parties. Moreover, voiding the settlement agreement, or its requirement that the parties enter into a general release of their claims against each other, is contrary to the public interest, as articulated by our Court of Appeals:

> [I]t is fundamentally important that parties be able to rely on the explicit language of written contracts. The public interest in certainty and finality is too critical to allow every agreement to be subject to collateral attack
> This policy applies with special force to releases, which are designed to resolve disputes out of court – not to spawn litigation. Parties will enter settlement agreements only if they are assured that the language contained in such releases will be treated as definitive and final.

Hershon, 864 F.2d at 853.

8

## III.

For the foregoing reasons, Havens has failed to show sufficient cause to prevent

enforcement of the general release agreed to in the February 26, 2002 settlement agreement.

Two orders, one entering a dismissal with prejudice and the general release proposed by the

Lukas firm, and one granting plaintiff's motion to enforce the settlement agreement, accompany

this memorandum.

July 23<sup>d</sup>, 2002

UNITED STATES DISTRICT JUDGE

9