## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WARREN C. HAVENS,

              **Plaintiff,**

      **v.**

PATTON BOGGS LLP, et al.,

              **Defendants.**

**Civil Action 05-01454 (HHK)**

## MEMORANDUM OPINION

Warren C. Havens brings this action against Patton Boggs LLP and some of its named and unnamed employees, alleging that their representation of Havens in a civil action in this court, *Lukas, Nace, Gutierrez & Sachs, Chartered v. Havens*, Civ. No. 99-395 (D.D.C.) (Green, J.) ("the Lukas Nace litigation"), constituted breach of contract and legal malpractice. Contending that  Havens's complaint is barred by the applicable statutes of limitations, defendants move for judgment on the pleadings [#8].  Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion must be granted.

## I.  BACKGROUND

On February 17, 1999, Havens and Patton Boggs entered into a written retainer agreement, pursuant to which the firm agreed to represent Havens in his defense and countersuit in the Lukas Nace litigation.  Havens alleges that, during the course of this litigation, defendants "made various mistakes, errors of judgment and/or failures to competently perform the services for which Plaintiff hired them" and "failed to keep Plaintiff reasonably informed about the

progress of the litigation and/or concealed important developments and other matters in

connection with their legal representation of Plaintiff." Compl. ¶ 11. As a "direct result,"

Havens replaced defendants with new counsel on May 8, 2000, in the midst of the litigation. *Id.*

¶ 12. Almost a year later, on March 28, 2001, Judge Green granted Lukas Nace's motion for

partial summary judgment, dismissing two of Havens's three counterclaims. Thereafter, Havens

entered into settlement discussions with Lukas Nace, eventually concluding—after a dispute

about the settlement agreement's terms and a motion to enforce a handwritten draft of the

agreement—with a court order on July 23, 2002, enforcing the settlement agreement. Havens

asserts that, because of defendants' actions, he was forced to settled his claims for "vastly less

than their actual value." *Id.* On July 22, 2005, he filed this case.

## II. DISCUSSION

Defendants move for judgment on the pleadings, pursuant to Rule 12©) of the Federal

Rules of Civil Procedure,[1] arguing that Havens failed to bring his claims within the applicable

three-year limitations period as required under D.C. Code § 12-301. The statute of limitations in

---

[1] The standard to be applied to defendants' motion for judgment on the pleadings is the same as that under Rule 12(b)(6). *Does I Through III v. Dist. of Columbia*, 238 F. Supp. 2d 212, 216 (D.D.C. 2002); *Dale v. Executive Office of the President*, 164 F. Supp. 2d 22, 24 (D.D.C. 2001). The motion "should not be granted 'unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.'" *Beverly Enters., Inc. v. Herman*, 50 F. Supp. 2d 7, 11 (D.D.C. 1999) (citing *Kowal v. MCI Commc'ns, Corp.*, 16 F.3d 1271 1276 (D.C. Cir. 1994). To that end, the complaint must be construed liberally in the plaintiff's favor and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Where the pleadings present disputed questions of material fact, the movant's motion for judgment on the pleadings must be denied. *Does I Through III*, 238 F. Supp. 2d at 216; *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir. 1977).

In resolving a Rule 12(c) motion, courts "are allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation." *Does I Through III*, 238 F. Supp. 2d at 216.

the District of Columbia is three years both for breach of contract claims, D.C. Code § 12-301(7),

and for professional negligence claims, *id.* § 12-301(8).[2]  Because Havens filed his complaint on

July 22, 2005, his claims are time-barred, absent tolling, if they accrued before July 22, 2002.

     Defendants argue that Havens's complaint makes clear that his breach of contract claim

accrued "on or before the date Plaintiff replaced Defendants with new counsel—May 8, 2000,"

Defs.' Mot. for Judgment on the Pleadings ("Defs.' Mot.") at 4, and that his legal malpractice

claim accrued "not later than March 28, 2001," when "the District Court [in the Lukas Nace

litigation] grant[ed] summary judgment against two of Plaintiff's three counterclaims."  *Id.* at 6.

Havens, by contrast, posits that his claims "did not accrue until—at the very earliest—July 23,

2002, when [the court in the Lukas Nace litigation] concluded that a handwritten agreement

[settling that litigation] was not the product of mutual mistake and represented all material terms

necessary for an enforceable agreement."  Pl.'s Opp'n to Defs.' Mot. for Judgment on the

Pleadings ("Pl.'s Opp'n") at 2.  Alternatively, Havens argues that, even if his claims accrued

before July 22, 2002, defendants "actively concealed their breach from him," thereby tolling the

statute of limitations "until late in 2003," when "Havens discovered that defendants had

'covered-up' their breach of duty of care."  *Id.* at 7–8.  The court agrees with defendants.

## A.  Breach of Contract

     For a breach of contract claim, the statute of limitations traditionally starts to run when

the contract is breached.  *See Allison v. Howard Univ.*, 209 F. Supp. 2d 55, 59 (D.D.C. 2002);

---

[2]  D.C. Code § 12-301(8) prescribes a three-year statute of limitations for all actions "for which a limitation is not otherwise specially prescribed."  Legal malpractice claims fall into this category. *See Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004); *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 994 (D.C. 1978).

*Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1198 (D.C. 1984) ("The contract is breached when the defective work is done and the statute of limitations begins to run from that time.") (alterations and internal quotations omitted). Here, Havens's complaint indicates that the "actions and inactions" constituting the alleged breach took place before he replaced defendants with substitute counsel in May 2000. *See* Compl. ¶ 21 ("Defendants breached the Agreement by failing [to] represent Plaintiff's interests in the Litigation competently"); *id.* ¶ 14 ("Defendants, *while acting as Plaintiff's attorneys* in connection with the Litigation, breached the standard of care applicable to attorneys in the relevant community") (emphasis added). Furthermore, by replacing defendants with new counsel, Havens terminated his contractual relationship with Patton Boggs, thereby making it impossible for defendants' alleged breach to have occurred any later than May 2000.

Havens asserts that the statute of limitations did not begin to run until more than two years later. According to Havens, "[a] breach of contract claim cannot be maintained without damages" and that he did not suffer damages until the court enforced the written settlement agreement on July 23, 2002. Pl.'s Opp'n at 8–9. This argument mistakenly conflates the existence of damages with the ease with which they can be quantified. Even though the extent of Havens's damages may not have been clear until the settlement was enforced in 2002, his claim nonetheless accrued when defendants allegedly breached their contract. *See* 31 RICHARD A. LORD, WILLISTON ON CONTRACTS § 79:14 (4th ed. 1990) ("[A] cause of action in contract accrues at the time of the breach . . . irrespective of any knowledge on the part of the plaintiff or of any actual injury occasioned to him or her."); *cf. Knight v. Furlow*, 553 A.2d 1232, 1236 (D.C.

1989) (stating, in a legal malpractice case, that "[t]he fact that not all of a client's damages are finally ascertainable . . . does not indicate that the client has not been injured earlier.").

Moreover, Havens's argument is belied by the allegations in his complaint, which state that defendants' asserted breach "effectively required [him] to obtain substitute counsel," Compl. ¶ 21, causing him "great expense and risk." *Id.* ¶ 12. Therefore, even assuming *arguendo* that Havens is correct in contending that his contract claim accrued not when the contract was breached, but rather when quantifiable damages could first be shown, the allegations in his complaint, which the court must assume to be true, demonstrate that he had sustained quantifiable damages by the time he obtained substitute counsel on May 8, 2000. Accordingly, Havens's claim for breach of contract accrued more than three years prior to his filing suit and is therefore barred by the applicable statute of limitations unless tolled by the doctrine of concealment, discussed below.[3]

## B. Legal Malpractice

As opposed to actions in contract, which accrue at the time of the wrongful act, actions in tort do not accrue until the plaintiff suffers injury. *Ehrenhaft*, 483 A.2d at 1199; *see also Fort Meyers Seafood Packers, Inc. v. Steptoe & Johnson*, 381 F.2d 261, 262 (D.C. Cir. 1967)

---

[3] While plaintiff never suggests that the "discovery rule," discussed *infra*, applies to his contract claim, D.C. Court of Appeals case law indicates that it might. *Woodruff v. McConkey*, 524 A.2d 722, 727 (D.C. 1987) ("The discovery rule thus far has been applied by this court . . . in cases involving professional negligence or malpractice, *regardless of whether the action is expressed in terms of contract or tort*.") (emphasis added) (citations omitted). Ultimately, however, the applicability of the discovery rule is irrelevant because, even if applied, the court would nonetheless hold that Havens's contract claim is time barred. Havens's complaint makes clear that he knew, or should have know, that his contract with Patton Boggs was breached, and that he suffered some injury as a result, by May 8, 2000, when he was forced to obtain substitute counsel "at great expense." Compl. ¶ 12.

(adopting the rule that a legal malpractice claim accrues when the injury occurs, not when the act

that causes the injury takes place).  Moreover, the injury suffered must be an "actual injury" as

opposed to "merely a speculative wrong."  *Wagner v. Sellinger*, 847 A.2d 1151, 1155 (D.C.

2004) ("If there is no injury, even the strongest belief that the defendant has caused the plaintiff

real harm will not transmute that belief into a reality for limitations purposes.").  That said, "the

plaintiff need not be fully informed about the injury for the statute of limitations to begin

running; she need only have *some* knowledge of *some* injury."  *Id.* at 1154 (emphasis in original).

In cases "where the relationship between the fact of injury and the alleged tortious

conduct is obscure" at the time the injury occurs, a three-pronged "discovery rule" is applied to

determine when the action accrues.  *Diamond v. Davis*, 680 A.2d 364, 379 (D.C. 1996); *Williams

v. Mordkofsky*, 901 F.2d 158, 162 (D.C. Cir. 1990).  Under the discovery rule, a plaintiff's claim

does not accrue, and the statute of limitations does not begin to run, until the plaintiff knows (or

by the exercise of reasonable diligence should know) (1) of the injury, (2) its cause in fact and (3)

of some evidence of wrongdoing.  *Bussineau v. President & Directors of Georgetown Coll.*, 518

A.2d 423, 425 (D.C. 1986).

Here, Havens's complaint makes clear that he was wronged by defendants, and that he

knew of such wrongdoing, by May 8, 2000.  Compl. ¶¶ 11–12 (stating that Havens "was forced

to engage new counsel" "[a]s a *direct result*" of defendants' alleged malpractice) (emphasis

added); *see also id.* ¶ 21 (stating that defendants "effectively required Plaintiff to obtain

substitute counsel *by their wrongful actions and inactions complained of herein*") (emphasis

added).  While it is unclear whether Havens had suffered an "actual injury" by this date sufficient

to begin the statute of limitations,[4] such actual injury definitely occurred by March 28, 2001,

when Judge Green dismissed two of Havens's three counterclaims. There is no dispute that this

ruling was adverse and reduced the value of Havens's claims. The fact that the extent of the

injury may not have been precisely calculable at that point is immaterial, for "[a]ny appreciable

and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon

which the client may sue." *Knight*, 553 A.2d at 1235 (internal quotation omitted); *see also* 3

RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE, § 22.16, at 439–40 (2006 ed.)

("Damage exists, though the sum is neither precise nor substantial. Confusion arises where the

plaintiff undertakes to avoid or mitigate damages . . . . Neither activity, however, otherwise

alters the present discovery of the apparent wrong.").

      Havens insists that "[a]ctual cognizable injury . . . did not come into existence until at the

earliest July 23, 2002." Pl.'s Opp'n at 6. He claims that, prior to this date, he was not injured

because he was "not sure whether a settlement existed or what the terms might be." *Id.* This

argument is meritless, for relevant case law makes clear that a plaintiff suffers injury in a legal

malpractice case well before she settles her claims for less than she would have absent her

attorney's alleged negligence. *See Weisberg v. Williams, Connolly & Califano,* 390 A.2d 992,

995 (D.C. 1978) ("[T]he date on which appellants finally settled the case against the government

_____

      [4] It may be that actual injury occurred at this time because Havens was forced to obtain
substitute counsel "at great expense." Compl. ¶ 12. Because the court concludes that Havens
sustained actual injury when Judge Green granted partial summary judgment, it is unnecessary
for the court to address this issue.

for less than they would have absent appellees' alleged negligence in handling their case . . . was well beyond the point at which appellants suffered injury.").[5]

Having established the existence of actual injury on March 28, 2001, when Judge Green dismissed two of Havens's counterclaims, it is clear that Havens knew, or through the exercise of reasonable diligence should have known, of that injury, its cause, and some evidence of wrongdoing before July 22, 2002.[6] Therefore, the face of Havens's complaint, combined with facts in the public record, demonstrate that his legal malpractice claim is time barred unless the statute of limitations was tolled due to defendants' alleged concealment.

## C.  Concealment

When a defendant fraudulently conceals the "existence of a cause of action," the statute of limitations is tolled. *Diamond*, 680 A.2d at 371–72; *Weisberg,* 390 A.2d at 995–96 (in a legal malpractice case, "[c]oncealment will exist if the attorney had knowingly made false representations; it is only then that his conduct, by way of estoppel or otherwise, will toll the

---

[5] A more recent case suggests that no actual injury occurs in a legal malpractice claim until the underlying litigation is concluded. *Wagner*, 847 A.2d at 1156 ("Typically, therefore, a potential—not actual—injury has occurred when a client claims that an attorney has mishandled a lawsuit still in progress . . . . [U]ntil the lawsuit is resolved (either by verdict or ruling in court or by settlement), the injury remains uncertain or inchoate."). Despite the broad language employed in *Wagner*, this court does not read it to suggest that partial resolution of a lawsuit, such as by way of partial summary judgment, does not give rise to actual injury.

[6] Although Havens's complaint does not state the date on which he learned of the adverse partial summary judgment ruling, he is charged with inquiry notice to discover it shortly after its occurrence. The court need not decide precisely how shortly thereafter; it was certainly before July 22, 2002, the last date of accrual that would fall within the statutory period absent tolling and nearly 16 months after the adverse partial summary judgment ruling.

running of the statute.").[7]  Havens asserts that defendants' motion to dismiss must be denied

because his complaint "specifically alleges" that defendants "actively concealed their breach

from him by feeding him bad advice and making false representations," and that "[i]t was not

until late in 2003 that Warren Havens discovered that defendants had 'covered-up' their breach

of care."  Pl.'s Opp'n at  7–8.  According to Havens, this presents an issue of triable fact

sufficient to overcome a Rule 12©) motion for judgment on the pleadings.  This argument is

unavailing for, as defendants note, it contradicts Havens's "own allegations in the Complaint."

Defs.' Reply at 4 n.4.

As Havens's complaint explicitly states, he replaced defendants with substitute counsel

on May 8, 2000, *because* he believed that they had represented him poorly.  *See* Compl. ¶ 21

("Defendants made various mistakes, errors of judgment and/or failures to competently perform

the services for which Plaintiff hired them.  They effectively required Plaintiff to obtain

substitute counsel by their wrongful actions and inactions complained of herein").  Consequently,

any alleged concealment on the part of Patton Boggs could not have extended beyond May 8,

2000.  Because the alleged concealment ceased *before* the statute of limitations began to run, it

---

[7]  The court notes that this doctrine has questionable applicability in jurisdictions, like
D.C., that apply the discovery rule.  *See* MALLEN & SMITH, § 22.15, at 407 ("Where the
discovery rule applies, the fraudulent concealment doctrine, unless attributable to mere
nondisclosure, is unnecessary").  The D.C. Court of Appeals has explained that, "[i]n cases
involving alleged misrepresentation or concealment, there is an obvious overlap between the
discovery rule and the tolling doctrine.  Courts differ in their formulation of the relevant
principles, but the key issue is whether under all the circumstances . . . the plaintiff was on
'inquiry notice' at the relevant time."  *Ray v. Queen*, 74 A.2d 1137, 1142 n.6 (D.C. 2000).  That
is, a defendant's concealment may justify a plaintiff's otherwise-inexcusable delay in discovering
evidence of wrongdoing; but once a plaintiff knows, or should know, of the defendant's
wrongdoing, the concealment doctrine ceases to be relevant.
    Despite its questionable relevance, the court will indulge Havens's argument, for doing so
does not affect the court's conclusion.

has no effect on the statutory deadline applicable to Havens's complaint. *Cf. Weisberg*, 390 A.2d at 996 ("[A] fraudulent concealment tolls a statute of limitations only for so long as the concealment endures.").[8]

### III.  CONCLUSION

For the aforementioned reasons, the court concludes that defendants' motion for judgment on the pleadings must be granted.  An appropriate order accompanies this memorandum opinion.

> Henry H. Kennedy, Jr.
> United States District Judge

Date: June 26, 2006.

---

[8]  Havens argues for the first time in his opposition that he discharged defendants, not because they were negligent, but rather "because their services were not worth the inflated rates they were charging."  Pl.'s Opp'n at 1.  The suggestion is that Havens replaced defendants for purely financial reasons and that, as a result of defendants' concealment, he did not discover their alleged wrongdoing until much later.  Because this post hoc rationalization is at odds with the facts alleged in the complaint, the court must disregard it when ruling on defendants' motion for judgment on the pleadings.  *See* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[2] at 12–69 (3d ed. 2000) (stating that in deciding a Rule 12 motion, "[t]he court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").